UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BACKJOY ORTHOTICS, LLC,**

    **Plaintiff,**

v.                                                      **Case No: 6:14-cv-249-Orl-28TBS**

**FORVIC INTERNATIONAL INC., WOOK
YOON, JOHN DOES, JANE DOES, and
ABC CORPORATIONS,**

    **Defendants.**

## TEMPORARY RESTRAINING ORDER *EX PARTE*

This case is before the Court on the Motion for Temporary Restraining Order *Ex Parte* filed by Plaintiff, BackJoy Orthotics, LLC. (Mot. TRO, Doc. 9). Plaintiff seeks to enjoin Defendants from: manufacturing and selling products that Defendants allegedly illegally copied; soliciting Plaintiff's clients or prospective clients; disclosing Plaintiff's trade secret information; and utilizing allegedly infringing materials in the advertisement of Defendants' products. Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rule 4.05, the Court finds that Plaintiff's motion should be granted in part.

**I.    Background**

Plaintiff is the creator of "an innovative orthopedic device that one sits on which realigns various parts of the body," known as the BackJoy orthotic seat device. (Compl., Doc. 1, ¶ 3).[1] Defendant Forvic International Inc. is a South Korean corporation that,

---

[1] This Background section contains facts as alleged by Plaintiff that are detailed here for purposes of ruling on the motion for temporary restraining order only. Defendants have not yet appeared in this case. Citations to affidavits are indicated by "[Last Name] Aff." This Order refers to affidavits of Roman Khaykin, an investigator hired by Plaintiff

between 2007 and 2013, manufactured the BackJoy orthotic seat device for Plaintiff. (Id. ¶ 17; Howensten Aff. ¶ 13). During the parties' business relationship, Plaintiff approached Forvic about manufacturing a new product—"an orthotic seat with lumbar support that included adjustable height capabilities," (Willingham Aff. ¶ 15)—but Forvic allegedly told Plaintiff that neither it nor any other manufacturer would be able to manufacture such a device, (id. ¶ 16). Forvic later attempted to manufacture the new product for Plaintiff but was unable to submit a proposal that met Plaintiff's standards. (Id.). Plaintiff found a new manufacturer for the latest device, but Forvic continued to manufacture the original BackJoy device for Plaintiff. (Id. ¶¶ 17, 18). Plaintiff alleges that Defendants later began marketing a device similar to the BackJoy products known as the S-Back and that they have obtained various foreign patents for the S-Back. (Id. ¶ 19; Howenstein Aff. ¶ 19).

Plaintiff sued Defendants,[2] alleging state and federal claims of unfair competition (Counts 2 and 5), copyright infringement (Count 3), patent infringement (Count 4), unjust enrichment (Count 7), violation of the Florida Uniform Trade Secrets Act (FUTSA)[3] (Count 8), violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)[4] (Count 9), and fraud (Count 10). (Compl.). Plaintiff also sued Defendant Forvic on counts of breach of contract based on the non-compete agreement (Count 1) and breach of the implied

---

(Doc. 9-1); Bing Howenstein, Chief Executive Officer of Plaintiff (Doc. 9-7); and Preston Willingham, Chief Technology Officer of Plaintiff (Doc. 9-15).

[2] In addition to Defendant Forvic, Plaintiff sues Wook Yoon, the Chief Executive Officer of Forvic. (Compl. ¶ 18). Together, Forvic and Yoon are referred to in this Order as "Defendants." Plaintiff also sues persons and entities unknown to Plaintiff and that are not directly addressed in this Order.

[3] §§ 688.001-.009, Fla. Stat. (2013).

[4] §§ 501.201-.213, Fla. Stat. (2013).

2

covenant of good faith and fair dealing (Count 6). (Id.). Plaintiff states that it intended to seek a preliminary injunction after Defendants were served with the Complaint but that it learned in March 2014 that "Defendants were ramping up their sales efforts (as opposed to mere manufacturing and marketing) regarding the S-Back." (Howenstein Aff. ¶ 29-30). Plaintiff now seeks a temporary restraining order without notice on the counts of violation of FUTSA, unfair competition, breach of the non-compete agreement, and copyright infringement. (Mot. TRO). Plaintiff requests that the temporary restraining order be extended beyond the time permitted by rule until Plaintiff can perfect service of process under the Hague Convention, as required for foreign defendants. (Id. at 1). According to Plaintiff, this process can take five months or more. (Id. at 2).

## II. Standard

"[T]he four factors to be considered in determining whether temporary restraining or preliminary injunctive relief is to be granted . . . are whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). A court can only issue a temporary restraining order without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and if "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

### III. Analysis

#### A. Likelihood of Success on the Merits

The first factor to consider is whether Plaintiff has established a substantial likelihood of success on the merits. This is generally seen as the most important factor in determining whether to grant a motion under Rule 65. Smith v. Conner, No. 8:12-CV-52-T-30AEP, 2012 WL 760623, at *1 (M.D. Fla. Mar. 7, 2012). "In order to satisfy this element, the movant requires a showing of 'only likely, rather than certain, success.'" Id. (quoting Home Oil Co., Inc. v. Sam's East, Inc., 199 F. Supp. 2d 1236, 1249 (M.D. Ala. 2002)). I consider here whether Plaintiff has met this burden on each of the claims as to which it seeks a temporary restraining order.

#### 1. *Florida Uniform Trade Secrets Act*

Plaintiff has shown a substantial likelihood of success on its FUTSA claim. To establish a claim under FUTSA, the plaintiff must show that "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy, and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." All Leisure Holidays Ltd. v. Novello, No. 12-62328-CIV, 2012 WL 5932364, at *4 (S.D. Fla. Nov. 27, 2012). FUTSA defines a trade secret as "information" that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." § 688.002(4), Fla. Stat. (2013). FUTSA allows for an injunction for "[a]ctual or threatened misappropriation." Id. § 688.003(1).

4

Plaintiff has shown that it possessed secret information. An officer of Plaintiff has sworn that Plaintiff had "various confidential and proprietary materials, including but not limited to, drawings, photographs, molds, prototypes, and how-to instruction manuals regarding the [original BackJoy] Device as well as subsequent updated versions thereto (which were confidential and secret)." (Willingham Aff. ¶ 14). Additionally, Plaintiff had "confidential plans for developing an orthotic seat with lumbar support that included adjustable height capabilities." (Id. ¶ 15). These materials and plans in possession of Plaintiff involve important information about Plaintiff's products and are substantially likely to derive independent economic value from not being generally known.

Plaintiff has also established that it has taken reasonable steps to protect the secrecy of the above materials. According to Plaintiff, it sent Defendants a confidentiality and non-compete agreement, (Ex. C to Willingham Aff., Doc. 9-18), and Defendants agreed to at least some of the agreement's terms, (Willingham Aff. ¶ 9; Ex. D to Willingham Aff., Doc. 9-19). Plaintiff has not submitted an executed agreement,[5] but it has submitted an email from Defendant Yoon stating that while Defendants would be required to disclose some information to related organizations like suppliers for manufacturing purposes, the company otherwise "will keep all informations confidencially [sic] for your goods and will train all people who are related with the development of your goods to treat all informations for your goods confidencially [sic]." (Ex. D. to Willingham Aff., Doc. 9-19, at 3). It was only after receiving that email that Plaintiff began to use Defendants to manufacture the

---

[5] Plaintiff does allege that the agreement was executed, however. (Willingham Aff. ¶ 12).

BackJoy product. (Willingham Aff. ¶ 11). Even without an executed non-compete agreement, I find that Plaintiff took reasonable steps to protect its secret information.

Finally, Plaintiff has shown there is a substantial likelihood that the secret in question was misappropriated by one who used improper means to obtain it. "'Improper means' includes . . . breach or inducement of a breach of a duty to maintain secrecy . . . ." § 688.002(1), Fla. Stat. As discussed above, Plaintiff has shown that an agreement to maintain confidentiality likely existed, and that agreement appears to have been violated by Defendants. Plaintiff has brought forth sufficient evidence to show that Defendants likely used Plaintiff's trade secrets in developing the S-Back. Thus, Plaintiff has demonstrated a substantial likelihood of success on the merits of its FUTSA claim by showing that Plaintiff's secret information that it took reasonable steps to protect was misappropriated.

### 2. Unfair Competition

Plaintiff also asks for a temporary restraining order on its claims of unfair competition under the federal Lanham Act[6] and Florida law. "To establish the likelihood of success on the merits of a false advertising claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the movant must establish: (1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising." Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002).

---

[6] 15 U.S.C. § 1051 et seq. The relevant provision of the Lanham Act is 15 U.S.C. § 1125(a).

Plaintiff alleges that "Defendants falsely advertise that the Copy Products are 'the world's first cushioned back orthotic using body weight,'" and Plaintiff has submitted a printout of Defendant Forvic's website which makes this assertion. (Mot. TRO at 16; Ex. E to Howenstein Aff., Doc. 9-12; see also Ex. G to Howenstein Aff., Doc. 9-14). Plaintiff also alleges that Defendants have "erroneously assert[ed] that they created the initial [BackJoy] Device'" to an investigator hired by Plaintiff. (Mot. TRO at 16; Khaykin Aff. ¶ 10; Ex. B to Khaykin Aff., Doc. 9-3, at 3 ("'Backjoy' is developed by our development team in 2007.'")).

Regarding the elements of an unfair competition claim, Plaintiff's products and Defendants' statements clearly affect interstate commerce. The statements were made on a website and via email, and the BackJoy product is sold throughout the United States and internationally. (Howenstein Aff. ¶ 5). In addition, Plaintiff has established a substantial likelihood of proving that the claims made by Defendants are false. According to Plaintiff, it owns a prior U.S. patent for a product that claims to be the first cushioned back orthotic using body weight. (Id. ¶ 23). Plaintiff has also successfully shown that the BackJoy was developed by Plaintiffs and that Defendants were involved only in its manufacture. Thus, both statements made by Defendants are likely literally false. For this reason, they also have a capacity to deceive consumers. See Johnson & Johnson, 299 F.3d at 1247 ("[O]nce a court deems an advertisement to be literally false, the movant need not present evidence of consumer deception.").

Questions remain, however, as to materiality and injury to Plaintiff. "In order to establish materiality, the plaintiff must demonstrate that 'the defendant's deception is likely to influence the purchasing decision.'" Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1319 (11th Cir. 2010) (quoting Johnson & Johnson, 299 F.3d at 1250). "A plaintiff may

7

demonstrate this by showing that 'the defendants misrepresented an inherent quality or characteristic of the product.'" Id. (quoting Johnson & Johnson, 299 F.3d at 1250). In its motion, Plaintiff does not argue that the false advertisements outlined above are material. (Mot. TRO at 16). It states only that the false advertisements are "likely to confuse consumers," (id.); it does not state whether or how the deception "is likely to influence the purchasing decision." The deceptions outlined by Plaintiff, on their face, do not indicate that they would likely influence purchasing decisions. For the same reason, Plaintiff has also not established that it was injured by the false advertisements. Accordingly, Plaintiff has not shown a substantial likelihood of success on the merits of its federal claim of unfair competition.

Plaintiff also seeks a temporary restraining order based on unfair competition under FDUTPA, as brought in Count 9. This statute declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. (2013). "To state a claim under FDUTPA, a party must generally allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Dynamic Designs Distribution Inc. v. Nalin Mfg., LLC, No. 8:13-cv-707-T-33TBM, 2014 WL 1576381, at *8 (M.D. Fla. Apr. 18, 2014) (quotation omitted). "A deceptive practice is one that is 'likely to mislead' consumers." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (quoting Davis v. Powertel, Inc., 776 So. 2d 971, 974 (Fla. 1st DCA 2000)). "An unfair practice is 'one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Id. (quoting Samuels v. King Motor Co. of Fort Lauderdale, 782 So. 2d 489, 499 (Fla. 4th DCA 2001)). "[A]nyone aggrieved by a violation of this [statute]

may bring an action . . . to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." § 501.211(1), Fla. Stat. (2013).

Plaintiff has not established the three elements of a claim under FDUTPA. Plaintiff does not specifically point to the acts as to which it is seeking relief under FDUTPA but instead references all of Defendants' actions regarding which it is seeking a temporary restraining order—"Defendants' theft of Plaintiff's trade secrets and confidential information and their false claims." (Doc. 9 at 17). Plaintiff further fails to specify how any of these actions caused actual damages to Plaintiff other than referencing sworn statements by its chief executive officer that it "faces the prospect of losing valuable customers as well as authorized distributors" and "faces the potentially unrecoverable loss of goodwill." (Howenstein Aff. ¶ 32). These bare assertions that Plaintiff will suffer damages are not enough to show a substantial likelihood of success on the merits of Plaintiff's FDUTPA claim.

Courts have found that actions for injunctive relief under FDUTPA cover a broader class of complainants than do actions for damages. <u>Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.</u>, 123 So. 3d 1149, 1152 (Fla. 5th DCA 2012). However, Plaintiff has not argued that it fits within the class of "anyone aggrieved" by a violation of FDUTPA, so it cannot obtain a temporary restraining order on this basis. Finally, Plaintiff seeks a temporary restraining order based on unfair competition under Florida common law, but it states that "courts apply elements from established causes of action (such as [the] Lanham Act or FDUTPA) on a case by case basis" in determining liability under Florida common law. (Mot. TRO at 16). Because I have found that Plaintiff has failed to show a substantial likelihood of success on its Lanham Act or FDUTPA claims, and because Plaintiff puts forth

no other basis for success on a Florida common law unfair competition claim, Plaintiff has also not demonstrated a substantial likelihood of success on this claim.

### 3. Breach of the Non-Compete Agreement

Plaintiff also requests a temporary restraining order because of Defendants' alleged breach of the non-compete agreement. (Mot. TRO at 17-18). Plaintiff claims this breach against Defendant Forvic only. (Compl. at 20-21). An injunction is the favored remedy for enforcing such an agreement. See U.S. Floral Corp. v. Salazar, 475 So. 2d 1305, 1306 (Fla. 3d DCA 1985) (per curiam); see also Capraro v. Lanier Bus. Prods., Inc., 466 So. 2d 212, 213 (Fla. 1985).

The first issue is whether Plaintiff and Forvic actually entered into a non-compete agreement. Plaintiff has not submitted an executed agreement. Plaintiff has, however, submitted emails in which Defendant agreed to keep information about Plaintiff's products confidential except in limited circumstances and in which Defendant seemed to otherwise agree with the terms of the agreement. (Ex. D to Willingham Aff., Doc. 9-19 ("Basically, we agree what you mean [sic] in this agreement.")). The terms of some provisions of the agreement may be somewhat unclear at this stage of the litigation, but for the purposes of its motion, Plaintiff has shown a substantial likelihood that the parties entered into a confidentiality and non-compete agreement.

The second issue is whether the contract, a restrictive covenant, would likely be enforceable as a matter of Florida law. In Florida, contracts that restrict competition are not prohibited "so long as such contracts are reasonable in time, area, and line of business." § 542.335(1), Fla. Stat. (2013). While the contract's terms put forth by Plaintiff may be found to be reasonable, Florida law provides that "[a] court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom

enforcement is sought." Id. § 542.335(1)(a). Plaintiff acknowledges that the non-compete agreement is a restrictive covenant, (Mot. TRO at 17), but Plaintiff has failed to present a signed version of the non-compete agreement, (Willingham Aff. ¶ 12). Plaintiff has failed to show that it has a substantial likelihood of success on the merits of its breach of contract claim under Florida law, and a temporary restraining order cannot be granted on this issue at this time.

    4.    *Copyright Infringement*

"To establish a claim of copyright infringement, a plaintiff must prove, first, that he owns a valid copyright in a work and, second, that the defendant copied original elements of that work." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "The plaintiff can prove copying either directly or indirectly, by establishing that the defendant had access, and produced something 'substantially similar,' to the copyrighted work." Id. Injunctive relief may be granted "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Such an injunction "may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable . . . by any United States court having jurisdiction of that person." Id. § 502(b).

Plaintiff alleges that Defendants infringed its copyrighted marketing and advertising materials, including photographs, drawings, the website, and other materials. (Compl. ¶¶ 45, 46). While "[c]opyright . . . subsists from its creation," 17 U.S.C. § 302(a); accord Eldred v. Ashcroft, 537 U.S. 186, 195-96 (2003), "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made." 17 U.S.C. § 411(a). In considering this issue, the Eleventh Circuit has indicated that the receipt (or denial) of an application for copyright

registration, not the mere filing of an application, is required for suit. See M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488-89 (11th Cir. 1990), abrogated in part by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010)[7]; id. at 1488 n.4; see also Cosmetic Ideas, Inc. v. IAC/Interactivecorp, 606 F.3d 612, 615-16 (9th Cir. 2010) ("[I]s a copyright registered at the time the copyright holder's application is received by the Copyright Office (the 'application approach'), or at the time that the Office acts on the application and issues a certificate of registration (the 'registration approach')? . . . The . . . Eleventh Circuit[] ha[s] adopted the registration approach.").

Though Plaintiff has apparently been selling the BackJoy device since at least 2007, (Compl., ¶ 35), it did not apply for registration of these materials until December 5, 2013, and the registration is currently pending, (Howenstein Aff. ¶ 26). According to Eleventh Circuit precedent and the plain language of § 411, Plaintiff's mere application for registration is not sufficient for federal court jurisdiction. For this reason, Plaintiff has not shown a substantial likelihood of success on the merits of its copyright claim, and it may not be granted a temporary restraining order on this count.

### B.  Irreparable Harm

Plaintiff has sufficiently established that it will suffer irreparable injury if a temporary restraining order is not entered as to misappropriation of trade secrets. Under Florida law, "irreparable harm and inadequate remedy at law should be presumed in an action for injunctive relief with respect to the misappropriation of a trade secret." Dotolo v. Schouten, 426 So. 2d 1013, 1015 (Fla. 2d DCA 1983); see also All Leisure Holidays, 2012 WL

---

[7] In Reed Elsevier, the Supreme Court concluded that "Section 411(a)'s registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction." 559 U.S. at 157.

5932364, at *5. Plaintiff has established a substantial likelihood of success on the merits of its claim of misappropriation of trade secrets, and irreparable harm is presumed.

Even if Plaintiff had shown a substantial likelihood of success on its other claims, however, it would not be able to establish that it will suffer irreparable injury as to those claims. Regarding its claims of unfair competition, as discussed above, Plaintiff has failed to show that Defendants' alleged actions caused harm to Plaintiff. As to its claims for breach of contract and copyright infringement, Plaintiff has not shown that it will be able to bring successful claims on these counts due to statutory requirements. For this reason, any presumption of irreparable injury on these claims is inapplicable here. See § 542.335(1)(j) ("The violation of an <u>enforceable</u> restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." (emphasis added)); <u>Block State Testing Servs., L.P. v. Kontractor's Prep Corp.</u>, 4 F. Supp. 2d 1365, 1367 (M.D. Fla. 1997) ("Since the Court finds that the likelihood of success on the copyright claim has not been shown by Plaintiffs, irreparable harm will not be presumed in this case."). Without a presumption, Plaintiff has not established that it will suffer irreparable injury on these other claims.

C.   **Balance of Equities**

The threatened injury to Plaintiff on its claims outweighs the harm that a temporary restraining order may inflict on Defendants. Plaintiff faces substantial harm as a result of the alleged misappropriation of trade secrets. On the other hand, the temporary restraining order against Defendants is relatively narrow in scope while protecting Plaintiff from illegal activity on the part of Defendants.

### D.     Public Interest

The granting of this temporary restraining order will also serve the public interest. Florida policy favors the protection of businesses and their trade secrets. <u>Hatfield v. AutoNation, Inc.</u>, 939 So. 2d 155, 158 (Fla. 4th DCA 2006) ("[T]he existence of Florida's trade secret statute illustrates our state's interest in protecting businesses from theft of confidential information.").

### E.     Summary

Having considered all of these factors, I conclude that Plaintiff is entitled to a temporary restraining order only on its claim under the Florida Uniform Trade Secrets Act. I next analyze whether Plaintiff has met the requirements for issuing such an order without notice.

### F.     Issuance Without Notice

A court may only issue a temporary restraining order without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and if "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). Here, specific facts in the affidavits attached to the motion clearly show that immediate and irreparable injury will result to the movant before Defendants can be heard in opposition with regard to Defendants' alleged misappropriation of trade secrets. Plaintiff has submitted evidence that Defendants are currently marketing products that are nearly identical to Plaintiff's BackJoy Products, (Howenstein Aff. ¶ 20), and that were likely obtained through Defendants' misappropriation of trade secrets. This will likely continue unabated unless Plaintiff obtains a temporary restraining order. As noted by Plaintiff,

proper service under the Hague Convention can take months, and in that time, much more damage could be done.

Plaintiff's attorney has certified that efforts have been made to give notice to Defendants. The motion states that a courtesy copy of the Complaint was sent to Defendants' known email address on February 21, 2014, and that a notice of receipt indicates that the email was opened on February 24, 2014.[8] (Mot. TRO at 2 n.1). Additionally, the motion states that Plaintiff "will immediately serve Defendants with a courtesy copy of the instant motion papers and Order via their known email address" upon issuance of a temporary restraining order. (Id. at 24 n.9). I find that Plaintiff has made sufficient effort to give notice to Defendants.

Plaintiff requests that the temporary restraining order remain in effect until service under the Hague Convention can be perfected on Defendants and a hearing on Plaintiff's motion for preliminary injunction can occur. (Proposed Order, Doc. 9-24). A temporary restraining order issued without notice "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2).

Under normal circumstances, the temporary restraining order could be issued, the defendant could be notified, and a hearing on a preliminary injunction could be set promptly. Here, however, the very reason a temporary restraining order has been requested is because service likely cannot be perfected within 14 days or 28 days. In this

---

[8] The motion actually states that the courtesy copy was sent on February 21, 2013, and that the email was read on February 24, 2013, but because the Complaint was not filed until February 13, 2014, the Court assumes that Plaintiff intended the year to read 2014.

situation, courts have found that a temporary restraining order can be extended until proper service can be completed. H-D Mich., LLC v. Hellenic Duty Free Shops S.A., 694 F.3d 827, 844 (7th Cir. 2012) ("[B]ecause formal service of process under the Hague Convention or other provisions of law can take months, [forbidding issuance of a temporary restraining order prior to formal service of process] would have the unfortunate effect of immunizing most foreign defendants from needed emergency injunctive relief. There is a reason Rule 65 allows emergency injunctive relief before service of process, and this case provides a good example."). "Given the length of time that it can take to serve a foreign defendant, placing a 28-day maximum on the TRO in these circumstances would effectively defeat injunctive relief because Defendants could simply wait for the TRO to dissolve." Samsung Elec. Co., Ltd. v. Early Bird Sav., No. 13-CV-3105-BEN (DHB), 2014 WL 324558, at *2 (S.D. Cal. Jan. 27, 2014). "When a TRO is extended beyond the 28-day limit without the consent of the enjoined party, it becomes in effect a preliminary injunction that is appealable, but the order remains effective." H-D Mich., 694 F.3d at 844.

The Eleventh Circuit has apparently not yet ruled on this issue. I find that the reasoning of the Seventh Circuit in H-D Michigan is persuasive. If a temporary restraining order could not be extended while a plaintiff waits for service to be perfected on defendants in compliance with the Hague Convention, many foreign defendants would be immunized from injunctive relief. Accordingly, I will extend the temporary restraining order granted herein until service is perfected on Defendants.

**IV. Bond**

Finally, Plaintiff requests that I not require it to post a bond. (Mot. TRO at 24). "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages

16

sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[T]he amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] the court may elect to require no security at all." BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 971 (11th Cir. 2005) (second alteration in original) (quotation omitted). Other than arguing that Defendants' conduct is "egregious," Plaintiff has not given specific reasons why it should not be required to post a bond as contemplated in Rule 65. Accordingly, its request that it should not be required to post a bond is denied. Plaintiff has not submitted an alternative suggestion for a proper amount of security except requesting that the bond be de minimis. (Mot. TRO at 24). I find that a proper amount for the bond is $10,000.

## V. Conclusion

Having considered Plaintiff's motion for temporary restraining order, I determine that Plaintiff is entitled to temporary injunctive relief. Accordingly, it is **HEREBY ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Temporary Restraining Order *Ex Parte* (Doc. 9) is **GRANTED IN PART AND DENIED IN PART**, as set forth herein.

2. Defendants Forvic International Inc. and Wook Yoon, and all other persons or entities in active concert and participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are enjoined from, or assisting others in, manufacturing, marketing, distributing, shipping, offering for sale, or selling any products developed through the use of Plaintiff's trade secrets; or disclosing Plaintiff's proprietary or trade secret information to others, including but not limited to Defendants' manufacturers.

3. This Order is conditioned on the posting by Plaintiff of a surety bond in the sum of $10,000, on or before Wednesday, May 7, 2014.

4. This Temporary Restraining Order shall remain in effect until a hearing on Plaintiff's subsequent preliminary injunction application, as set forth below, can be held.

5. Plaintiff shall file proof of service with this Court within two days of being notified that personal service has been perfected on Defendants in accordance with the requirements of the Hague Convention.

6. Plaintiff shall file its motion for preliminary injunction, and all papers in support thereof, within two days of filing the proof-of-service notice listed in paragraph 5 above. The Court will then set a hearing on the motion for preliminary injunction.

7. Defendants shall file answering papers, if any, within ten days of the application for preliminary injunction. If Plaintiff wishes to file a reply, it may only do so after obtaining leave of the Court as provided in the Local Rules.

8. In addition to formal service requirements in accordance with the Local Rules, copies of this Order may be served by electronic mail, facsimile transmission, personal or overnight delivery, or U.S. Mail, by agents and employees of BackJoy on: (1) any Defendant in this action; and (2) any other person or entity that may be subject to any provision of this Order. To the extent it has not already done so, BackJoy shall attempt to accomplish service of this temporary restraining order and other relevant documents in accordance with Local Rule 4.05(b)(5). Defendants are hereby given notice that any act by them or any one of them in violation of any of the terms of this Order may be considered and prosecuted as contempt of this Court.

9. Upon two days' written notice to the Court and Plaintiff's counsel, any Defendant may, upon proper showing, appear and move for the dissolution or modification of this Order.

**DONE** and **ORDERED** in Orlando, Florida, on May 2nd, 2014, at 1:35 p.m.

---
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties