# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

BACKJOY ORTHOTICS, LLC,

Plaintiff,

v.

FORVIC INTERNATIONAL INC.,
WOOK YOON, and various JOHN DOES,
JANE DOES and ABC Corporations,

Defendants.

CASE NO: 6:14-cv-00249-CEM-TBS

**FIRST AMENDED COMPLAINT**

JURY TRIAL REQUESTED

INJUNCTIVE RELIEF REQUESTED

## FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff BACKJOY ORTHOTICS, LLC ("BACKJOY" or "Plaintiff"), by and through

its undersigned counsel, hereby sues Defendants FORVIC INTERNATIONAL INC.

("Defendant Forvic") and WOOK YOON ("Defendant Yoon") as well as certain individuals and

entities as yet unknown to Plaintiff (collectively, along with Defendants Forvic and Yoon,

"Defendants"), and by and through its First Amended Complaint states as follows:

## NATURE OF THE ACTION

1.     This is an action for injunctive relief and damages for unfair competition arising

under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended ("the Lanham Act"),

copyright infringement under 17 U.S.C. § 1, *et seq.* ("the Copyright Act"), violation of the

Florida Uniform Trade Secrets Act, misappropriation of confidential and proprietary

information, breach of contract (non-disclosure and non-compete provisions), and for unfair

competition, violation of good faith and fair dealing, unjust enrichment, and deceptive acts and

practices arising under the laws of the State of Florida.

1

2.     Plaintiff seeks preliminary and permanent injunctive relief preventing Defendants from the manufacture, sale and distribution of devices which Defendants have made using confidential information of Plaintiff, and are selling and offering to sell in violation of Defendants' agreement not to compete with Plaintiff, as well as other damages, including compensatory, punitive, and reimbursement of attorneys' fees and costs.

3.     Plaintiff creates and distributes novel and innovative solutions that enhance posture to relieve and prevent back pain, with various products in the sit, stand, and sleep categories. In particular, Plaintiff has created, marketed and sold an innovative orthopedic device that one sits on which realigns various parts of the body, as more particularly described below, known as the BACKJOY® orthotic seat device, and is now sold throughout the world. A photograph of the device is shown below:



(hereinafter the "BJ1 Device"). Plaintiff has grown significantly since 2006 and has been recognized in national entrepreneurial magazines as among the fastest growing small companies. The sales of the BJ1 Device have grown exceptionally well. Plaintiff also has developed a

ME1 22164650v.1

further iteration of such device which incorporates certain improvements to the BJ1 Device as well as adding a lumbar support (hereinafter the "BJ2 Device").

4.　　At all times relevant, Defendants had been the regular supplier of the BJ1 Device for Plaintiff.  Defendants made the BJ1 Device in a factory in China which, on information and belief, Defendant Forvic, and its principal, Defendant Yoon, own and/or control together with Defendants John Doe, Jane Doe and/or ABC Companies.  Notwithstanding this relationship, Defendants and various parties working with them not yet known to Plaintiff  have misappropriated Plaintiff's technology, confidential and proprietary information, and trade secrets regarding the BJ1 Device (sold by Plaintiff  in various versions, including the BACKJOY Core®, BACKJOY® Posture+, BACKJOY® Relief, BACKJOY® Relief+, Relief Mini, Relief Mini+ and Posture+ Mini seat inserts) and the BJ2 Device (collectively, the "BACKJOY Products") and are now manufacturing, marketing, and attempting to sell their own unauthorized, illegal versions thereof (the "Copy Products").

5.　　A copy of one of Defendants' Copy Products, which they are selling under the name "S-Back," is shown below:



Copies of Defendants' web pages advertising their Copy Products are attached hereto as Ex. A and incorporated herein by reference.

6.      In advertising and marketing the Copy Products, Defendants have lifted, without authority or approval of Plaintiff, Plaintiff's copyrighted text and materials, which are used by Plaintiff in the print, advertising and marketing of Plaintiff's BACKJOY Products.

7.      Defendants obtained the information used to make the Copy Products solely as a result of their confidential relationship with Plaintiff.  Defendants' actions not only infringe on Plaintiff's protected intellectual property rights but also are in direct violation of a Confidential Disclosure and Non-Compete Agreement entered into between Plaintiff and Defendants on January 4, 2007 (the "Non-Compete Agreement") in that the Copy Products incorporate the confidential information of Plaintiff and directly compete with Plaintiff and its BACKJOY Products.

8.      The Non-Compete Agreement is enforceable under § 542.335 of the Florida Statutes.  Plaintiff will suffer irreparable harm if Defendants are permitted to manufacture and sell the Copy Products as the Copy Products are, *inter alia,* inferior to Plaintiff's in every respect, including materials, construction, durability and function, yet closely resemble Plaintiff's BACKJOY Products to the degree of harming the well-earned reputation of Plaintiff for quality products that meet or exceed the claims made regarding the benefits, durability and attractiveness, entitling Plaintiff to the injunctive relief it seeks as well as monetary damages arising out of Defendants' acts complained of herein.

9.      In connection with the Non-Compete Agreement, and otherwise generally as between Plaintiff and Defendants, Defendants agreed to safeguard Plaintiff's confidential and

proprietary business and trade secrets. Defendants intentionally and maliciously breached this agreement by manufacturing and offering to sell the Copy Products for their own gain.

10. For these and other reasons, and unless enjoined, Defendants have caused and will continue to cause irreparable harm to Plaintiff as well as monetary damages. Plaintiffs seek a preliminary injunction enjoining Defendants from marketing or selling their Copy Products *pendente lite* for reasons that are made clear below.

## JURISDICTION AND VENUE

11. Subject matter jurisdiction is conferred by 35 U.S.C. §1331 and 1338(a) (federal question), 15 U.S.C. §1121 (Lanham Act)and 35 U.S.C. § 1338(b) (unfair competition) as well as the Copyright Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Original jurisdiction exists pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court has personal jurisdiction over Defendant Forvic because it contractually agreed to personal jurisdiction in this Court by reason of the Non-Compete Agreement. The Non-Compete Agreement provides by its terms that any dispute regarding the agreement would be tried in the courts sitting in Orange County, Florida, U.S.A., and will be determined under Florida Law. *See* Non-Compete Agreement and related e-mail correspondence referenced in paragraphs 31-33 below and incorporated by reference herein.

13. Personal jurisdiction is proper over Defendant Yoon pursuant to Florida Long-Arm Statute, Section 48.193(g), Florida Statutes. At all times relevant Defendant Yoon directed and controlled Defendant Forvic and was and is responsible for the acts of Defendants complained of herein.

14. Personal jurisdiction of all Defendants also lies by reason of Rule 4(k)(2) of the Federal Rules of Civil Procedure in that Defendants have ongoing and regular business contacts in and throughout the United States and derive substantial benefits from commerce conducted with the United States.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) and § 1400(b). Venue also is proper in this judicial district by reason of agreement by the parties conferring, *inter alia,* exclusive jurisdiction over disputes arising from the Non-Compete Agreement in the courts located within this State. Defendants have committed and/or threatened to commit acts of infringement in this District, and this action arises from those acts. Defendants have engaged in business in this Commonwealth and District and purposefully availed themselves of the privilege of conducting business in this District, for example, by manufacturing and shipping the BJ1 Device to Florida and offering for sale the Copy Products. A photograph of a sample of Defendants' Copy Product obtained by reason of a sale thereof from Defendants to Plaintiff's investigator is reproduced below:



**THE PARTIES**

16.     Plaintiff is a Colorado corporation with its principle place of business at 6685 Gunpark Drive, Suite 200 Boulder, Colorado 80301.

17.     On information and belief, Defendant Forvic is a corporation organized and existing under the laws of South Korea, with its principle place of business at 3rd FL. EunCheon Bldg. 127, ShinHeung 2 – Dong, Sujeong – Gu, SeongNam City, KyunGi-Do, South Korea. Upon information and belief, Defendant Forvic is a contract manufacturer of materials for shoes and other products that manufacture products at factories located, *inter alia,* in China, which factories are under the control of Defendants and others unknown to Plaintiff at this time. Defendant Forvic sells its Copy Device via the Internet on website(s) under its control, *see* www.forvic.com and www.s-back.com. ("Defendants' Web Sites").  On information and belief, Defendants are actively seeking distributors for the Copy Products throughout the World.

Defendants' Web Sites are available in English and directly sell to consumers located in the United States, including this State and District.

18.     Upon information and belief, Defendant Yoon is a South Korean citizen, residing at 203-804 Jukjeon First Heim Apt. Jukjeon 1-dong, Sugi-gu, Yongin-si, Gyeonggi-do, South Korea, and conducts business through the offices of Defendant Forvic.  Upon information and belief, at all times relevant, Defendant Yoon was and currently is the CEO of Defendant Forvic, conducted all key dealings with Plaintiff, and executed and agreed to the terms of the Non-Compete Agreement on behalf of Defendant Forvic.  Upon information and belief, Defendant Yoon was and has been the force and decision maker for Defendant Forvic and was and is responsible for the acts complained of in this Complaint.

19.     Defendants John Doe, Jane Doe and ABC Companies are persons and entities unknown to Plaintiff at this time, who reside in Korea and the People's Republic of China, who have aided and abetted Defendants Forvic and Yoon in their development, manufacture and sale of the Copy Products.  Plaintiff will amend this Complaint upon discovery of the identity of these persons and entities as this Action progresses.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A.      Plaintiff's History and Growth**

20.     Since 1984, Plaintiff  (and its predecessors) have been designing innovative and novel  products to improve posture and reduce back pain.  Plaintiff  has offered a wide range of back support and posture products, including its flagship line of innovative orthopedic seat supports,  BACKJOY Core®, BACKJOY Posture+, BACKJOY Relief, BACKJOY Relief+, BACKJOY Posture+ Team, Relief Mini, Relief Mini+ and Posture+ Mini seat inserts.  Plaintiff has developed a new version of the orthopedic seat, the BJ2 Device above referenced.  The BJ2 Device, which incorporates a lumbar support, is in manufacture and is expected to reach retail

stores shortly.  Genuine BACKJOY Products are sold throughout the United States and currently distributed in over 40 countries, including South Korea, through authorized distributors.

21.     Plaintiff owes its BACKJOY orthopedic seat inception to a son's passion to ease his father's back pain.  In 1984, Preston Willingham ("Willingham"), an entrepreneur, inventor and nationally renowned sculptor, became obsessed with the idea of inventing a product that would ease the pain and discomfort his father suffered.  Willingham invented what turned out to be the first in an expanding line of BACKJOY® branded Products.

22.     During that same year, 1984, Willingham formed BackJoy of Florida, Inc. ("BJ Florida") as the vehicle to exploit the initial BACKJOY Product.

23.     In 2005 Willingham and BJ Florida terminated their relationship, and Willingham granted the rights to exploit the orthotic seat device and the intellectual property and trade secrets appurtenant thereto to Willingham Design & Manufacturing, Inc. ("Design").

24.     That same year, 2005, Bing Howenstein ("Howenstein") joined with Willingham to continue to exploit the BACKJOY Products.  Howenstein believed these products conferred a real health benefit to consumers and believed the brand itself could be consequentially expanded.

25.     As a result, in 2005, BackJoy Orthotics, LLC (Plaintiff herein) was formed. Shortly thereafter, Plaintiff was granted a limited right by Design to market and sell the BACKJOY orthotic seat device.

26.     Approximately two years later, on or about December 1, 2007 (after Design and Defendants had entered into the Non-Compete Agreement ), Willingham and Design transferred and assigned all rights to exploit the BACKJOY Products to BJ Florida, which had renamed itself Willingham Brothers, Inc. (thereafter converting to an LLC ("Brothers.")).  BJ Florida, now Brothers', license included, *inter alia,* the right to use Willingham and Design's know-how

and commercial and technical information, as well as the right to institute and maintain proceedings against persons or entities who wrongfully used or exploited devicesor inventions embodied in the company's intellectual property. Brothers in turn granted a license to all such rights exclusively to Plaintiff..

27. After several years of rapid growth, in 2010 Willingham transferred and assigned all his intellectual property rights, including trade secrets and rights to the trademark BACKJOY, and all rights appurtenant thereto and associated therewith, to Brothers who in turn transferred, sold and assigned all such rights to Plaintiff. As a result, Plaintiff as of 2010, held and continues to hold all rights in and to all the intellectual property owned and/or controlled by Willingham, Brothers and/or Design in and to the BACKJOY trademark, tradename, BACKJOY Products as well as any and all rights developed subsequent thereto.

28. Since 2010, Plaintiff has continued to grow, expanding not only in the United States but throughout the World, now enjoying a global multiple-channel distribution arrangement and being a shining example of American entrepreneurial spirit and success.

**B.** **Defendants As Manufacturer for Plaintiff**

29. Upon information and belief, prior to 2007, Defendants were in the business of manufacturing materials used in footwear and had no expertise in the orthotic industry nor had they ever designed, developed, manufactured distributed, offered for sale or sold any orthotic back products or seat inserts in any manner similar or related to the BACKJOY orthotic seat embodied in BJ1 and BJ2 Devices.

30. The first contact between Plaintiff and Defendants occurred on December 30, 2006, when Willingham contacted Defendants by email seeking information regarding Defendants' manufacturing capabilities. A copy of a Dec. 30, 2006 to Jan. 3, 2007 email exchange is attached hereto as Ex. C.

10

31.     After corresponding via email for several days, Defendant Yoon requested that Plaintiff send samples of BACKJOY Products to Defendants "for our study." A copy of a January 2, 2007 email from Defendant Yoon is attached hereto as <u>Ex. D</u>. In response, before making any such disclosure or shipment of information, Willingham emailed Defendant Yoon the Confidential Disclosure and Non-Compete Agreement and stated that he would send sample BACKJOY Products provided Defendant signed and returned said agreement. A copy of the Jan. 3, 2007 email from Willingham to Yoon is attached hereto as <u>Ex. E</u>.

32.     By email dated January 3, 2007, a copy of which is attached hereto as <u>Ex. F</u>, Defendants agreed to the terms of the Non-Compete Agreement stating: "[b]asically, we agree what you mean in this agreement," (expressing at the same time some concerns about necessary internaldisclosure of information to "mould planner, mould shops, raw material's [*sic*] supplier, raw materials' technicians etc" a) and went on to say :

> Of course, we will keep all informations confidencially [*sic*] for your goods and will train all people who are related with the development of your goods to treat all informations for your goods confidencially [*sic*]. But, the story (not serious informations or technical notice) for your goods will be able to flow to other place or to unknown people through us known people like above cases.

33.     On January 4, 2007, Willingham responded via email that reads "Dear Wook Yoon, Your comments made me fell [*sic*] more confident about proceeding. I understand the issues very well. You are in the middle. How do you suggest we proceed? " A copy is attached hereto as <u>Ex. G</u>. In reliance on Defendants' agreement to the Non-Compete Agreement, Plaintiff moved forward to start a manufacturing relationship with Defendants.

34.     In subsequent conversations, including one held as recently as November 23, 2013, Defendants confirmed that they had signed and agreed to the terms of the Non-Compete Agreement. At all times relevant, Plaintiff relied on the adherence of Defendants to the terms of

the Non-Compete Agreement in continuing to give Defendants' the business of making BACKJOY Products for Plaintiff and disclosing Plaintiff's plans for new and improved versions of such BACKJOY Products under development, including but not limited to the BJ2 Device.

**C.      Defendants' Access to BACKJOY's Confidential, Proprietary, and Trade Secret Information**

35.      Between 2007 and November 23, 2013, Plaintiff and Defendants engaged in a business relationship in which Defendants supplied and manufactured materials used in BACKJOY Products on a contract basis.  During the entirety of the business relationship between Plaintiff and Defendants, all confidential information disclosed by Plaintiff or its predecessors to Defendants was disclosed pursuant and subject to the Non-Compete Agreement.

36.      Defendants had difficulty manufacturing more recent versions of the BACKJOY orthotic seats.  Willingham frequently traveled to meet with Defendants and to provide them with relevant expertise and know-how so that the BACKJOY Products could be manufactured to Plaintiff's  standards and specifications and in doing so provided Defendants with Plaintiff's confidential and proprietary materials, but not limited to, drawings, photographs, molds, prototypes, and how-to instruction manuals.

**D.      In 2007, Plaintiff First Disclosed the Concept of a Lumbar-Support Orthotic Seat Version to Defendants**

37.      By email dated  July 16, 2007, Willingham emailed Defendants regarding Plaintiff's confidential plans for developing an orthotic seat with lumbar support that included adjustable height capabilities.  A copy of the email is attached hereto as Ex. H.  On December 11, 2008, at a meeting between Willingham and Defendant Yoon (the "December 11, 2008 Meeting"), Willingham showed Defendant Yoon prototypes of this new design.  Photographs of the prototypes are attached hereto as Ex. I; photographs of Willingham and Defendant Yoon discussing said prototypes are attached hereto as Ex. J.

12

38. At all times relevant, Defendants indicated they would not be able to make the product that ultimately became the BJ2 Device and went so far as to say no one could make such a product. Defendants tried without success to make such a device however all prototypes thereof were rejected by Plaintiff by reason of their sub-standard construction.

39. In 2010 Plaintiff made a final determination that the BJ2 Device would have to be made by a different manufacturer .

40. Plaintiff, at all times relevant, continued to maintain its manufacturing relationship with Defendants and, until recently, routinely placed orders with Defendants for the manufacture of the BJ1 Device and other BACKJOY Products. During such time Plaintiff was ignorant of Defendants' actions in developing the competing Copy Products, which used Plaintiff's confidential information and plans.

**E. Defendants' Misappropriation of Plaintiff's Proprietary and Confidential Information**

41. Defendants' S-Back product, one of the Copy Products, is a virtual copy of BJ1 Device as is the marketing and other material used by Defendants in their effort to sell their S-Back Product. Defendant's S-Back Product incorporates the early lumbar support designs disclosed by Plaintiff to Defendants as described above. Defendants' Websites currently advertise two different S-Back products, the "S-Back Pro" and the "S-Back Standard." *see, http://s-back.net/main/index.* The S-Back product incorporates the design and know-how of the BJ1 Device as well as the extremely confidential plans of Plaintiff for the BJ2 Device. Until Plaintiff disclosed its confidential information regarding the BJ2 Device to Defendants, Defendants had neither the knowledge nor concept of building an orthotic seat device with a lumbar support.

ME1 22164650v.1

42.     At least as early as 2011, Defendants, having wrongfully stolen the confidential information and trade secrets of Plaintiff in the BJ2 Device, applied for and received various foreign patents and trademarks relating to the S-Back all the while keeping such actions secret from Plaintiff and claiming that Plaintiff's version of the BJ2 Device could not be made.

43.     Defendants' Copy Products are advertised, promoted and sold in some of the same channels of trade and to the same customers as the BACKJOY Products, including but not limited to advertising and promotion on the Internet.  The Copy Products are marketed and promoted on Defendants'  English-language website, http://healthchair.forvic.com/eng//.  A screen shot of Defendants' English-language website is attached hereto as Ex. K.

44.     Defendants  falsely advertise on their  English-language website that the "S-Back" products are the "World's first cushioned back orthotic using body weight" and by holding themselves out as the inventors of BackJoy's technology and design by advertising that Defendants have pending patents for the Copy Products throughout the world. (http://healthchair.forvic.com/eng/index.php). This is one of the claims associated with Plaintiff's patent for the BJ1 Device.

**F.     Defendants' Copying of Plaintiff's Copyrighted Materials**

45.     Plaintiff  has developed and owns all rights, including copyrights in its proprietary marketing and advertising material used in connection with its sale of  BACKJOY Products.

46.     The design, configuration and distinctive features of Plaintiff's copyrighted photographs and drawings / catalogue / website (www.backjoy.com), and of works related thereto (hereinafter "Plaintiff's Materials"), are wholly original with Plaintiff  and, as fixed in various tangible media, including websites and catalogues, are copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101, *et seq*.

14

47.     Plaintiff complied in all respects with the Federal Copyright Act and all other laws governing copyright and applied for a copyright registration on December 5, 2013. On May 30, 2015, the Copyright Office issued Registration No. VAu-1-156-365 with an effective date of December 5, 2013, for BackJoy'sphotographs and drawings / catalogue / website.

48.     Examples of Plaintiff's Materials include:

  

48.     Defendants' marketing and related print and digital materials contain numerous photographs and drawings that infringe upon Plaintiff's copyrighted works.   Defendants have copied the layout, design, and overall impression of Plaintiff's photographic illustrations of the use of the BACKJOY Products, including, but not limited to those shown below:



49. Defendants' distribution and use of advertising and marketing material substantially similar to and copying the protected elements of Plaintiff's Materials all without the permission, consent or authority of Plaintiff must be enjoined by this Court and has damaged Plaintiff in an amount to be determined.

**G.     Discovery of Defendants' Wrongful Conduct and Their Refusal to Stop**

50. Earlier this year, Plaintiff's sole authorized Korean distributor discovered the Copy Products being marketed at a trade show in South Korea. According to the distributor, the Copy Products appeared substantially similar if not identical to BACKJOY Products. The distributor notified Plaintiff of its discovery. This was the first notice Plaintiff had of the acts of which Defendants complained herein.

51. Plaintiff, through counsel and investigators retained by counsel, determined that Defendants had started to manufacture and sell the infringing the Copy Products in the form of

their S-Back Device. Plaintiff obtained samples of such S-Back Device in later 2013 and sought a meeting with Defendants to discuss what appeared to Plaintiff to be: (i) blatant copying by Defendants of Plaintiff's BJ1 Device; (ii) misuse by Defendants of Plaintiff's confidential information including, in particular, the development of an orthotic seat device with a lumbar support; and (iii) the prohibited direct competition by Defendants.

52.     On or about November 23, 2013, Plaintiff's representatives met with Defendants, to demand, *inter alia,* that Defendants cease any manufacturing and sale of the S-Back Device or any other products competing with Plaintiff's BACKJOY Products. Defendants delivered their demand orally and by letter. Defendants denied copying, denied infringement, and indicated Defendants were proceeding with their S-Back device.

53.     As of the date hereof, Defendants are offering to sell the S-Back in Korea and China as well as throughout the World via the Internet, including the United States. Defendants are using references by alleged United States consumers lauding Defendants' Copy Products. Plaintiff has now terminated all business relations with Defendants.

## IRREPARABLE INJURY AND NEED FOR INJUNCTIVE RELIEF

54.     Plaintiff has spent years developing the BACKJOY Products. As a result the design of the orthotic seats sold under the BACKJOY trademark and tradename enjoys significant respect with the consuming public.

55.     Defendants' S-Back device is a substandard, low-quality copy of the BACKJOY Product. Those consumers who use the S-Back device are more likely than not to associate the non-performance of Defendants' S-Back device with the look of products of a similar nature such as the Plaintiff's product. Consumers are likewise likely to lose all faith in the performance of the BACKJOY Products by reason of the non-performance of the S-Back. The damage to the

name, trade name, trademark and market to Plaintiff will be forever lost and cannot later be corrected or recovered by a more tested high quality product such as that offered by Plaintiff.

56.     The damage to the market done by introduction of a substandard device such as Defendants' illegal S-Back product is likely to forever last in the minds of consumers who form the market for such products. Trust of this nature once lost is virtually impossible to rebuild.

57.     Unless restrained, first *pendente lite* and then permanently, Defendants will continue to make and sell their substandard device, using materials and information unlawfully stolen from Plaintiff to which Plaintiff owns all rights. Such actions will damage, injure, and cause irreparable harm to Plaintiff, in particular Plaintiff's trademark BACKJOY and will greatly tarnish the same.

58.     Absent intervention of this Court, Defendants' breach of the Non-Compete Agreement, including their misappropriation of Plaintiff's confidential and proprietary information and trade secrets to develop the Copy Products, constitutes deceptive acts and practices that will cause lasting and irreparable harm to Plaintiff and must be restrained by this Court.

## <u>COUNT ONE</u>

### BREACH OF CONTRACT
### (AGAINST DEFENDANT FORVIC)

59.     Plaintiff  incorporates the allegations contained in paragraphs 1-58 as if fully set forth herein.

60.     The sale, transfer and assignment from Brothers to Plaintiff incorporated all rights in and to, *inter alia*, the BACKJOY Products including, without limitation, the rights Brother enjoyed to the Non-Compete Agreement arising from the transfer by Design to Brother of Design's rights thereunder.

18

61.     Plaintiff has all rights under the Non-Compete Agreement held previously by Brothers, including, without limitation, the right to prevent a breach thereof by Defendant Forvic and those in concert with Defendant Forvic.

62.     The Non-Compete Agreement is an enforceable contract prohibiting Defendant Forvic from, *inter alia*, disclosing Plaintiff's confidential information and making or marketing a device substantially similar to the BACKJOY® Orthotic Seat or otherwise competing with Plaintiff.  Defendant Forvic's manufacture, sale, and offer to sell the S-Back Copy Product, as well as seeking to obtain and secure patents to the same, are in violation and breach of the provisions of the Non-Compete Agreement aforesaid.

63.     The Non-Compete Agreement satisfies all the requirements of § 542.335 of the Florida Statutes governing the enforcement of non-compete agreements.

64.     The trade secrets, confidential information, and/or good will that Plaintiff seeks to protect are "legitimate business interests" entitled to protection under Florida law.

65.     Enforcement of the Non-Compete Agreement by Plaintiff is within the two-year limitation placed thereon pursuant to applicable Florida law.

66.     Plaintiff is in compliance with the Non-Compete Agreement.

67.     By reason of the acts described above, Defendant Forvic has breached the Non-Compete Agreement, including the limitations not to disclose or use for its own benefit or divulge to others information about Plaintiff's inventions and business and to not compete with Plaintiff  "by making or marketing a device substantially similar to the BACK JOY® Orthotic Seat."

68.     Defendant Forvic's actions have caused and will continue to cause substantial harm and irreparable injury to Plaintiff if Defendant Forvic is not restrained from manufacturing, marketing, and/or selling the Copy Products.

69.     Plaintiff has been forced to retain legal counsel in this matter and to incur fees and costs.  Pursuant to the Non-Compete Agreement, Defendant Forvic is liable to Plaintiff for these fees and costs.

70.     By reason of the above, Plaintiff has been damaged in an amount to be determined by this Court but no less than $250,000.

## COUNT TWO

### UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. §1125(a)
### (AGAINST ALL DEFENDANTS)

71.     Plaintiff incorporates the allegations contained in paragraphs 1-70 as if fully set forth herein.

72.     Defendants' acts in promoting, offering for sale and selling of the Copy Products constitute unfair competition and false advertising in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

73.     Defendants' acts have been committed intentionally, maliciously, fraudulently, and willfully for the purposes of deceiving consumers into purchasing the Copy Products, and with the specific intent to appropriate to Defendants and to employ for its own benefit the valuable goodwill and business reputation represented held by Plaintiff in and to Plaintiff's BACKJOY Products and the intellectual property related thereto as well as the tradename BACKJOY.

74.     Defendants' acts have caused and, unless enjoined, will continue to cause Plaintiff's tradename, tradedress, trademarks, and copyrights to be tarnished, diluted, and

otherwise suffer substantial irreparable damage and injury in the manner detailed in this

Complaint. Plaintiff has no adequate remedy at law.

75.     Defendants' actions have been extraordinary, entitling Plaintiff to attorneys' fees

and cost of suit, and to such other and further relief as the Court shall deem appropriate in the

circumstances.

## COUNT THREE

### COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 1, *et seq.*
### (AGAINST ALL DEFENDANTS)

76.     Plaintiff incorporates the allegations contained in paragraphs 1-75 as if fully set

forth herein.

77.     Plaintiff owns all rights, including copyright in and to Plaintiff's Materials

Defendants' marketing materials, in print and digital media, have unlawfully and without

authorization copied and used substantial portions of Plaintiff's Materials.

78.     Defendants' unauthorized copying and use of Plaintiff's Materials  was  and is

deliberate, knowing and in willful disregard of Plaintiff's property rights.

79.     Plaintiff has sustained, and will continue to sustain, substantial damage to the

value of its creative works in Plaintiff's Materials.

80.     Plaintiff has no adequate remedy at law, has suffered and continues to suffer

irreparable harm and damage, and, unless enjoyed by the Court, Defendants' infringing activities

will continue.  Plaintiff seeks preliminary and permanent injunctive relief pursuant to 17 U.S.C.

§ 502.

## COUNT FOURUNFAIR COMPETITION UNDER FLORIDA COMMON LAW
### (AGAINST ALL DEFENDANTS)

ME1 22164650v.1

81.     Plaintiff incorporates the allegations contained in paragraphs 1-89 as if fully set forth herein.

82.     The acts of Defendants complained of herein constitute continuing unfair competition by Defendants in violation of the common law of the State of Florida applicable to and restricting such acts.

83.     Defendants' aforesaid acts are likely to continue unless restrained by this Court. Such acts have and will continue to cause Plaintiff to suffer irreparable damage and must be prevented by this Court.  Plaintiff has no adequate remedy at law.

84.     By reason of the acts of Defendants complained of herein, and the damage done to Plaintiff, Plaintiff has lost sales of authentic BACKJOY Products, and thus has suffered a loss of profits unjustly enriching Defendants.  Plaintiff is entitled to monetary damages from Defendants, inclusive of counsel fees and costs by reason of the malicious and intentional nature of Defendants' aforesaid acts.

85.     Plaintiff requests restitution in an amount to be shown at any trial of this action.

86.     Plaintiff is entitled to recover its attorneys' fees and costs as provided in the Non-Compete Agreement as Plaintiff has been forced to enforce the terms thereof in the instant action.


## COUNT FIVE

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (AGAINST DEFENDANT FORVIC)

87.     Plaintiff incorporates the allegations contained in paragraphs 1-86 as if fully set forth herein.

88.     The Non-Compete Agreement contains an implied covenant of good faith and fair dealing.

77.     By reason of the aforementioned actions, Defendant Forvic has breached that covenant.

89.     Such conduct of Defendant Forvic, as complained of by Plaintiff, has caused and will continue to cause damage to Plaintiff in an amount to be determined by this Court but no less than $250,000.

90.     Plaintiff has been forced to retain legal counsel in this matter and to incur fees and costs.  Pursuant to the Non-Compete Agreement, Defendant Forvic is liable to Plaintiff for such fees and costs as are incurred.

**COUNT SIX**

**UNJUST ENRICHMENT**
**(AGAINST ALL DEFENDANTS)**

91.     Plaintiff incorporates the allegations contained in paragraphs 1-90 as if fully set forth herein.

92.     Upon information and belief, Defendants have benefited from the misappropriation of trade secrets, proprietary, and confidential information belonging to Plaintiff.

93.     The circumstances render Defendants' retention of the benefits inequitable unless Defendants compensate Plaintiff for the fair value of Defendants' benefit.

94.     The benefit to Defendants has operated to the detriment of Plaintiff and Plaintiff is entitled to damages.

ME1 22164650v.1

# COUNT SEVEN

## VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT
## (AGAINST ALL DEFENDANTS )

95.     Plaintiff incorporates the allegations contained in paragraphs 1-94 as if fully set forth herein.

96.     As a result of its relationship with Plaintiff, Defendants were  provided with trade secret information belonging to Plaintiff.

97.     Plaintiff's confidential and proprietary information constitutes trade secrets in that:  a) said items were a secret; b) the items were not generally known to the public and not readily ascertainable by those who could benefit from the disclosure or use of the trade secret; c) the items were valuable to Plaintiff's business and would be valuable to competitors who obtained them; d) Plaintiff and its predecessors have expended considerable time, knowledge and expense in developing these items; and e) the items could not be easily duplicated or properly acquired by others.

98.     Plaintiff took reasonable steps to safeguard the information.

99.     In creating the Copy Products, Defendants  intentionally relied upon Plaintiff's trade secrets.

100.     The use of Plaintiff's trade secrets by Defendants  violates the Florida Uniform Trade Secrets Act and will result in monetary damages and irreparable harm to Plaintiff.

101.     Defendants'  misappropriation of Plaintiff's trade secrets was willful and malicious in that Defendants did so with the intent to financially injure Plaintiff for its own benefit.

ME1 22164650v.1

102.     If  Defendants' acts and conduct in misappropriation or utilization of such trade secrets is not permanently enjoined, Plaintiff will be irreparably injured and will have no adequate remedy at law.

103.     Injunctive relief is necessary and proper to protect Plaintiff's trade secrets and to restrict Defendants misappropriation and use of the same.  The issuance of interim injunctive relief is needed to prevent any final decision of this Court on the merits from being made moot by intervening events.  The issuance of final and permanent injunctive relief will prevent any continuing irreparable harm to Plaintiff and will not cause unfair loss to Defendants or result in any injury or inconvenience to the public.

104.     Pursuant to Section 688.005, Florida Statutes, Plaintiff seeks and is entitled to recover its attorneys' fees.

105.     The Non-Compete Agreement likewise provides for an award of counsel fees to Plaintiff as well as all costs expended and which may be expended by Plaintiff in the preparation, filing, and pursuit of the instant action.

## COUNT EIGHT

### VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (AGAINST ALL DEFENDANTS)

106.     Plaintiff incorporates the allegations contained in paragraphs 1-105 as if fully set forth herein.

107.     Defendants' acts as described above, including but not limited to Defendants' usurpation of Plaintiff's confidential and proprietary information and trade secrets to manufacture, market, and attempt to sell the Copy Products, as well as the actual use of Plaintiff's copyrighted works in Defendants' marketing materials for the Copy Products,

constitute deceptive acts and practices and false advertising in violation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq.*, Fla. Stat. (2013).

108.    Plaintiff has no adequate remedy at law.

109.    As provided in Section 501.2105, Florida Statutes, Plaintiff is entitled to recover its attorney's fees and costs from Defendant Forvic.

## COUNT NINE

### FRAUD
### (AGAINST ALL DEFENDANTS)

110.    Plaintiff incorporates the allegations contained in paragraphs 1-109 as if fully set forth herein.

111.    Defendants made false statements of material fact, as set forth above, in order to induce Plaintiff into providing Defendants with Plaintiff's confidential and proprietary information and trade secrets.

112.    Defendants knew that the representations were false at the time they were made.

113.    Plaintiff justifiably relied on Defendants' representations to its detriment.

114.    Defendants' actions were willful, fraudulent, and intentional.

115.    As a result of Defendants' actions, Plaintiff is entitled to damages, plus punitive damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court to enter judgment for Plaintiff and to grant it the following relief:

1.    AS TO COUNT ONE:

A.    A judgment finding that Defendant Forvic is in violation of the January 4, 2007 Confidential Disclosure and Non-Compete Agreement;

ME1 22164650v.1

B.      An order prohibiting Defendant Forvic from competing with Plaintiff for two years from the date of Plaintiff's termination of their relationship;

C.      An award of damages adequate to compensate Plaintiff;

D.      An award of costs and prejudgment and post judgment interest on Plaintiff's compensatory damages;

E.      An award of Plaintiff's attorney's fees incurred in this action;

F.      Such further relief as this Court deems just and proper.


2.      AS TO COUNT TWO:

A.      A judgment finding that Defendants have committed and continue to commit unfair competition in violation of the Lanham Act;

B.      An order preliminarily and permanently enjoining Defendants from engaging in unfair competition with Plaintiff;

C.      An award of damages adequate to compensate Plaintiff;

D.      A three-fold increase in damages as a result of Defendants' willful, wanton, and deliberate acts of infringement;

E.      An award of costs and prejudgment and post judgment interest on Plaintiff's compensatory damages;

F.      An award of Plaintiff's attorney's fees incurred in this action;

G.      Such further relief as this Court deems just and proper.

3.      AS TO COUNT THREE:

A.      A judgment finding that Defendants infringe Plaintiff's copyrighted advertising material in violation of the Copyright Act;

B.      An order preliminarily and permanently enjoining Defendants from infringing Plaintiff's copyrighted advertising material;

C.      An award of damages adequate to compensate Plaintiff;

D.      A three-fold increase in damages as a result of Defendants' willful, wanton, and deliberate acts of infringement;

ME1 22164650v.1

E.      An award of costs and prejudgment and post judgment interest on Plaintiff's compensatory damages;

F.      An award of Plaintiff's attorney's fees incurred in this action;

G.      Such further relief as this Court deems just and proper.

4.      AS TO COUNT FOUR:

A.      A judgment finding that Defendants have committed and continue to commit unfair competition in violation of Florida Common Law;

B.      An order preliminarily and permanently enjoining Defendants from engaging in unfair competition with Plaintiff;

C.      An award of damages adequate to compensate Plaintiff;

D.      A three-fold increase in damages as a result of Defendants' willful, wanton, and deliberate acts of infringement;

E.      An award of costs and prejudgment and post judgment interest on Plaintiff's compensatory damages;

F.      An award of Plaintiff's attorney's fees incurred in this action;

G.      Such further relief as this Court deems just and proper.

6.      AS TO COUNT FIVE:

A.      A judgment that Defendant Forvic has violated the covenant of good faith and fair dealing;

B.      An award of damages adequate to compensate Plaintiff;

C.      An award of costs and prejudgment and post judgment interest on Plaintiff's compensatory damages;

D.      An award of Plaintiff's attorney's fees incurred in this action;

E.      Such  further relief as this Court deems just and proper.

7.      AS TO COUNT SIX:

A.      A judgment that Defendants have been unjustly enriched;

B.    An award of damages adequate to compensate Plaintiff;

C.    Such further relief as this Court deems just and proper.

8.    AS TO COUNT SEVEN:

A.    A judgment finding that Defendants have misappropriated Plaintiff's confidential, proprietary, and trade secret information;

B.    An order preliminarily and permanently enjoining Defendants, and those in active concert or participation with Defendants, from further utilization or misappropriation of such trade secrets;

C.    An award of damages adequate to compensate Plaintiff;

D.    An award of costs and prejudgment and post judgment interest on Plaintiff's compensatory damages;

E.    An award of punitive damages;

F.    An award of Plaintiff's attorney's fees incurred in this action;

G.    Such further relief as this Court deems just and proper.

9.    AS TO COUNT EIGHT:

A.    A judgment finding that Defendants have engaged in unfair and deceptive trade practices in violation of Florida Law;

B.    An award of damages adequate to compensate Plaintiff;

C.    An award of costs and prejudgment and post judgment interest on Plaintiff's compensatory damages;

D.    An award of punitive damages;

E.    An award of Plaintiff's attorney's fees incurred in this action;

F.    Such further relief as this Court deems just and proper.

10.    AS TO COUNT NINE:

A.    A judgment finding that Defendants have engaged in fraud;

B.     An award of damages adequate to compensate Plaintiff;

C.     An award of costs and prejudgment and post judgment interest on Plaintiff's compensatory damages;

D.     An award of punitive damages;

E.     An award of Plaintiff's attorney's fees incurred in this action;

F.     Such further relief as this Court deems just and proper.

**PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

BACKJOY ORTHOTICS LLC

By its attorneys,

/s/ Jackson Adams
FL Bar Number 47970
Attorney For Plaintiff Backjoy Orthotics, LLC
Jackson W. Adams, P.A.
33 East Robinson St. Suite 206
Orlando, FL 32801
Telephone (407) 545-2249
Fax (407) 386-7915
E-mail: jadams@jwa-law.com

OF COUNSEL:

MCCARTER & ENGLISH, LLP
Harley I. Lewin
James H. Donoian
245 Park Avenue
New York, New York 10167
Tel: 212-609-6800
jdonoian@mccarter.com
hlewin@mccarter.com

Dated:  March 23, 2016

ME1 22164650v.1

ME1 22164650v.1