UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BACKJOY ORTHOTICS, LLC,

       Plaintiff,

v.                                      Case No: 6:14-cv-249-Orl-41TBS

FORVIC INTERNATIONAL INC., WOOK
YOON, JOHN DOES, JANE DOES and
ABC CORPORATIONS,

       Defendants.

_____

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Entry of Default Final Judgment. (Doc. 96). Defendants have not responded and the time to do so has expired. Upon consideration of the motion and prevailing case law, I respectfully recommend that Plaintiff's motion be **GRANTED in part** and **DENIED in part.**

### I. Background

#### A. Factual Background

In 1984, entrepreneur and inventor Preston Willingham formed BackJoy of Florida, Inc. ("BackJoy" or "Plaintiff") after he invented an orthotic seat (the "BJ1 Device") that realigns various parts of the body to enhance posture and relieve back pain (Doc. 76, ¶¶ 3, 21-22). The BJ1 Device is sold throughout the world (Id. ¶ 3). Since then, BackJoy and its predecessors, as assignees of rights in the BJ1 Device, have continued to market and sell the now patented BJ1 Device as well as other back support and posture products (Id. ¶ 20).

Prior to 2007, Defendants Forvic International, Inc. and its principal, Wook Yoon were in the business of manufacturing materials used in footwear and had no experience

in the orthotics industry (Id. ¶ 29). On December 30, 2006, Mr. Willingham contacted Defendants by email seeking information about Defendants' manufacturing capabilities (Id. ¶ 30). After corresponding via e-mail, Mr. Yoon requested that Mr. Willingham send samples of the BJ1 Device to Defendants "for our study." (Id. ¶ 31). Prior to doing so, Mr. Willingham e-mailed Mr. Yoon a copy of a Confidential Disclosure and Non-Compete Agreement (the "NDA"), which among other things, provided that Forvic "agrees to receive all proprietary and confidential information in confidence and to hold the same in confidence." (Id. ¶ 31; Doc. 76-5 at 3). The NDA further provided that Mr. Yoon "agrees not to use for his own benefit or for the benefit of others ... any proprietary or confidential information about [BackJoy's] [i]nvention [or] business, including ... [BackJoy's] trade secrets" and that Forvic "agrees not to compete with [BackJoy] by making or marketing a device substantially similar to the" BJ1 Device (Doc. 76-5 at 3).

Upon receiving the NDA Mr. Yoon responded, "[b]asically, we agree [with] what you mean in this agreement." (Doc. 76-6 at 3). Mr. Yoon continued, "[o]f course, we will keep all information[] confiden[t]ial[] ... and will train all people who are related with the development of your goods to treat all information[] for your goods confiden[t]ially." (Id.). Mr. Willingham responded to Mr. Yoon by stating, "[y]our comments made me fe[e]l more confident about proceeding." (Doc. 76-7 at 2). In reliance upon Defendants' agreement to the NDA, BackJoy started a manufacturing relationship with Defendants. (Doc. 76 ¶ 33). Between 2007 and November 23, 2013, BackJoy frequently provided Forvic with "confidential and proprietary materials," including "drawings, photographs, molds, prototypes, and how-to instruction manuals," and Defendants supplied and manufactured materials used in BackJoy products (Id. ¶¶ 35-36).

BackJoy subsequently developed a new device, "an orthotic seat with lumbar support that included adjustable height capabilities" (the "BJ2 Device") (Id. ¶ 37). On July

16, 2007, Mr. Willingham e-mailed Defendants regarding his plans to further develop and produce the BJ2 Device (Id.) On December 11, 2008, Mr. Willingham showed prototypes of the BJ2 Device to Mr. Yoon (Id.). Defendants initially indicated that they would not be able to manufacture the new device and that no one else could make it either (Id. ¶ 38). Defendants subsequently submitted various prototypes to BackJoy, which rejected them based on "sub-standard construction." (Id.). Eventually, in 2010, BackJoy decided to use a different manufacturer to produce the BJ2 Device (Id. ¶ 39). BackJoy nevertheless maintained its relationship with Defendants and continued to place orders for Defendants to manufacture the BJ1 Device and other BackJoy products (Id. ¶ 40).

In early 2014, BackJoy's authorized Korean distributor discovered that Defendants had produced a number of products substantially similar to BackJoy's products, and were marketing those products at a trade show in South Korea (Id. ¶ 50). Defendants were marketing and selling various products as their "S-Back" product line. (Id. ¶ 41). The S-Back products incorporate the design of the BJ1 Device as well as the confidential plans for the BJ2 Device. (Id.). As early as 2011, Defendants applied for and received various foreign patents and trademarks for the S-Back products. (Id. ¶ 42). Defendants have advertised, promoted, and sold the S-Back products in some of the same channels of trade and to the same customers as BackJoy's products. (Id. ¶ 43). In its advertising materials, Defendants incorporated the design, configuration, and distinctive features of BackJoy's copyrighted photographs, drawings, catalogues, and website. (Id. ¶¶ 46-48).

After learning of the S-Back products and investigating them further, BackJoy's representatives arranged a November 23, 2013 meeting with Defendants (Id. ¶¶ 51-52). During that meeting, BackJoy demanded that Defendants cease all manufacturing and sale of the S-Back Device and any other products competing with BackJoy's products (Id. ¶ 52). Defendants denied infringement and indicated that they would continue to produce

the S-Back products (Id.). In response, BackJoy terminated its business relationship with Defendants (Id. ¶ 53).

### B. Procedural History

BackJoy filed its initial Complaint on February 13, 2014 (Doc. 1). On April 24, 2014, BackJoy moved for a temporary restraining order ("TRO") based on selected claims (Doc. 9). A TRO (Doc. 10) was entered, but only as to BackJoy's claim under the Florida Uniform Trade Secrets Act ("FUTSA"), FLA. STAT. §§ 688.001-688.009. (Id. at 4-12). The TRO only enjoined Defendants "who receive actual notice of" the TRO, (id. at 17), and its duration was extended pending foreign service of Defendants (Id. at 15-18). When BackJoy was unable to serve Defendants, the Court granted its motion for alternative service. (Doc. 17 at 9-10). On July 7, 2015, the Court ordered BackJoy to immediately serve Defendants via e-mail, mail, and through counsel; the Court also set a preliminary injunction hearing (Id. at 9-11). That same day, BackJoy served Defendants' active e-mail addresses in accordance with the Court's instructions (See Doc. 18, at 1-2). Those e-mails were not returned as undeliverable and BackJoy obtained "registered receipt[s]," which confirmed delivery (Id.).

BackJoy subsequently moved for a preliminary injunction, (Doc. 22), and a hearing on that motion was held on July 17, 2015, which Defendants did not attend. On July 28, 2015, the Court granted BackJoy's motion with respect to the FUTSA claim and enjoined Defendants "and all other persons or entities in active concert and participation with them from, or assisting others in, manufacturing, marketing, distributing, shipping, offering for sale, or selling any products developed through the use of BackJoy's trade secrets; or disclosing BackJoy's proprietary or trade secret information to others, including but not limited to Defendants' manufacturers." (Doc. 32 at 11-12).

Defendants eventually appeared in the case and moved to dismiss the Complaint

for lack of personal jurisdiction and improper service. (See Doc. 50). The Court denied

the motion on March 7, 2016 (Doc. 73). Pursuant to Rule 12 of the Federal Rules of Civil

Procedure, Defendants were required to file a responsive pleading within 14 days of that

order (Id.). Defendants did not file a responsive pleading.

BackJoy filed an Amended Complaint on March 23, 2016, and re-filed the

Amended Complaint with exhibits on March 28, 2016 (Docs. 75, 76). Pursuant to Rule

15(a)(3), Defendants were required to file a response within 14 days after service of the

amended pleadings. Again, Defendants did not filed a responsive pleading. Their counsel

filed a motion for leave to withdraw on August 1, 2016, in which they stated, "Defendants

do not intend to retain substitute counsel and have chosen not to continue defending this

case." (Doc. 92, ¶ 3).

In light of Defendants' failure to file a responsive pleading, BackJoy filed a motion

for entry of default on August 1, 2016 (See Doc. 91). The Court granted that motion on

August 3, 2016 (see Doc. 94), and the Clerk entered a default as to Defendants on the

same date (See Doc. 95).   BackJoy now moves for entry of default judgment against

Defendants.

## II. Discussion

### A. Default Judgment

The entry of a default by the Clerk does not necessarily require the court to enter a

default judgment. DIRECTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1206 (M.D. Ala.

2005). Along with the requirement that the Clerk's entry of default be proper, the Court

may enter a default judgment only if the Complaint sufficiently alleges a basis for default

judgment. Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th

Cir. 1975).[1] Before the Court will enter judgment pursuant to FED. R. CIV. P. 55(b), there must be a sufficient basis in the pleadings to support the relief sought. DIRECTV, Inc., 359 F. Supp. 2d at 1206. "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short ... a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Nishimatsu, 515 F.2d at 1206.

### B. Entry of Default Judgment on Certain Claims is Appropriate

In its motion, BackJoy requests injunctive relief, attorney's fees, and costs. (See Doc. 96 at 19-22). BackJoy does not request damages on any of its claims, nor does it offer any evidence to establish the amount of any damages. When a plaintiff alleges in its complaint that it is entitled to damages for a cause of action, a default judgment may be entered if the plaintiff establishes not only the underlying acts but also the resulting damages. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, n. 27 (11th Cir. 1997). Courts have held that entry of default judgment is not warranted where the plaintiff has offered no evidence of its damages. See, e.g., Matthew v. Hi*Tech Elec. Displays, Inc., No. 804-CV-2021-T-23MSS, 2005 WL 5950966, at *6 (M.D. Fla. Oct. 17, 2005); Maus v. Ennis, No. 6:10-CV-1904-ORL-31, 2012 WL 1252677, at *8 (M.D. Fla. Mar. 16, 2012), report and recommendation adopted, No. 6:10-CV-1904-ORL-31, 2012 WL 1252669 (M.D. Fla. Apr. 13, 2012), aff'd, 513 F. App'x 872 (11th Cir. 2013) (concluding that even though plaintiff's allegations, taken as true, would support a claim for invasion of privacy/unauthorized appropriation of name, plaintiff was not entitled to a default judgment on that claim because it did not present any evidence as to royalties or punitive

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

damages sufficient to support the claim). I conclude that in the absence of any evidence of damages, BackJoy is not entitled to default judgment for those counts of its amended complaint for which it does not seek injunctive relief: Count Five (breach of implied covenant of good faith and fair dealing), Count Six (unjust enrichment), Count Eight (violation of the Florida Unfair and Deceptive Trade Practices Act), and Count Nine (fraud). Accordingly, I consider only whether BackJoy is entitled to default judgment on those counts in which it alleges entitlement to injunctive relief.

### 1. Count One – Breach of Contract

To prevail on a beach of contract action, a plaintiff "must prove (1) a valid contract; (2) a material breach; and (3) damages." Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). In Count One of the Amended Complaint, BackJoy alleges that Defendants entered into a valid contract prohibiting disclosure and competition (the NDA). (Doc. 76 ¶¶ 31-34). BackJoy alleges that Defendants materially breached that contract by manufacturing, selling, and offering to sell a device substantially similar to the BackJoy Orthotic Seat, and that the breach resulted in damages to BackJoy. (Id. ¶¶ 41-44, 52-53, 55-58). Based on these well-pleaded allegations, I find that BackJoy is entitled to a default judgment on this claim.

### 2. Counts Two and Four – Unfair Competition under the Lanham Act and Florida Common Law

In Count Two of the Amended Complaint, BackJoy alleges that Defendants engaged in unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). To prevail on a unfair competition/false advertising claim under the Lanham Act, a plaintiff must establish that: (1) the defendant's advertisements were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the

misrepresented product or service affects interstate commerce; and (5) the plaintiff has been injured as a result of the false advertising. See North Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1224 (11th Cir. 2008).

Upon review, I find that the allegations of BackJoy's unfair competition/false advertising claim are well-plead. BackJoy alleges that Defendants falsely advertised on their English-language website that the S-Back products are the "World's first cushioned back orthotic using body weight," and that Defendants have pending patents for the S-Back products, effectively holding themselves out as the inventors of the technology and design created by BackJoy (Doc. 76 ¶ 44) Second, BackJoy alleges that Defendants promoted, advertised, and sold the S-back products in the same channels of trade and to the same customers as the BackJoy products (id. ¶ 43), and that BackJoy's authorized Korean distributor saw the S-Back products at a trade show and believed them to be identical to BackJoy's products (Id. ¶ 50). BackJoy alleges that Defendant's deception is likely to have a material effect on purchasing decisions because the S-Back products are a substandard, low-quality version of the BackJoy products and customers who mistakenly confuse the two products will likely lose faith in the performance of the BackJoy products by reason of the non-performance of the S-Back products (Id. ¶ 55). BackJoy further contends that Defendants have offered the S-Back products in Korea and China and throughout the world on the internet, including the United States, thus affecting interstate commerce (Id. ¶ 53). Finally, BackJoy alleges that Defendants' actions are likely to result in the loss of BackJoy's trade name, trademark, and market, and that, once lost, BackJoy's marks and brand will be nearly impossible to rebuild (Id. ¶¶ 55-57).

These allegations also satisfy the requirements for BackJoy's common law unfair competition claim asserted in Count Four. "Florida's law of unfair competition is much broader than the federal cause of action for [unfair competition]." Arral Indus., Inc. v.

Touch Entm't, Inc., No. 99-0916-CIVHIGHSMITH, 2000 WL 141269, at *5 (S.D. Fla. Jan. 18, 2000). "Under Florida law, unfair competition acts as an 'umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practices in industrial or commercial matters.'" Stoneworks v. Empire Marble & Granite, Inc., No. 98-2017-CIV-HIGHSMITH, 1998 WL 998962, *5 (S.D. Fla. Nov. 20, 1998) (quoting Chassis Master Corp. v. Borrego, 610 F. Supp. 473, 479 (S.D. Fla. 1985)). "Florida law [of unfair competition] requires that [a plaintiff] establish deceptive or fraudulent conduct of a competitor and likelihood of customer confusion." Donald Frederick Evans & Assocs. v. Continental Homes, Inc., 785 F.2d 897, 914 (11th Cir. 1986). Backjoy's allegations satisfy this showing.

### 3. Count Three – Copyright Infringement

BackJoy alleges in Count Three of its Amended Complaint that Defendants engaged in copyright infringement in violation of 17 U.S.C. § 1 *et seq.* To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991). Ownership is established by the copyright registration, which constitutes prima facie evidence of copyright validity and the ownership facts stated on the certificate. 17 U.S.C. § 410(c). "A prima facie case of copying is established from a showing that a defendant had access to the copyrighted work and that substantial similarities exist between the original work and the infringing work." Dream Custom Homes, Inc. v. Modern Day Const., Inc., 773 F. Supp. 2d 1288, 1301 (M.D. Fla. 2011), aff'd, 476 F. App'x 190 (11th Cir. 2012). Access can be presumed if there is "striking similarity." Kent v. Revere, No. 84-798-CIV-ORL-18, 1985 WL 645, *5 (M.D. Fla. 1985).

BackJoy alleges it applied for a copyright registration of its advertising materials and that the registration was granted on May 30, 2015, effective December 5, 2013 (Doc. 76 ¶ 47). BackJoy also alleges that Defendants likely had access to the copyrighted advertising materials as a result of their confidential relationship with BackJoy (Id. ¶ 7, 9). BackJoy has alleged substantial similarity of the advertising materials by comparing BackJoy's materials and Defendants' side-by-side, demonstrating that Defendants "copied the layout, design, and overall impression of Plaintiff's photographic illustrations." (Id. ¶¶ 48, 49). On the basis of these allegations, I find that BackJoy has properly alleged a claim for direct copyright infringement.

### 4. Count Seven – Violation of FUTSA

The elements of a claim under FUTSA are: "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy, and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." Del Monte Fresh Produce Co. v. Dole Food Co., 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001); FLA. STAT. § 688.002. In previously granting both the TRO and the preliminary injunction, the Court found that BackJoy had adequately alleged its FUTSA claim, a finding that requires no further analysis and demonstrates that BackJoy is entitled to default judgment on this claim.

### C. Injunctive Relief on These Counts Is Appropriate

Having determined that the well-pleaded allegations of Counts One, Two, Three, Four, and Seven support the entry of default judgment against Defendants, I turn to the question of whether BackJoy has sufficiently demonstrated it is entitled to a permanent injunction on these claims.

In order to receive a permanent injunction, a plaintiff must demonstrate: (1) he suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering, the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, LLC, 547 U.S. 388 (2006). Injunctive relief is authorized for each of the counts addressed above. See, e.g., Miller Mechanical, Inc. v. Ruth, 300 So. 2d 11, 12 (Fla. 1974) (although a trial court may award damages for a breach of a non-compete agreement, "the normal remedy is to grant an injunction."); 15 U.S.C. § 1116 (Lanham Act) ("The several courts ... shall have power to grant injunctions ... to prevent a violation of subsection (a), (c), or (d) of Section 1125."); American Bank of Merritt Island v. First American Bank & Trust, 455 So. 2d 443, 445-46 (Fla. 5th DCA 1984) (recognizing a cause of action can be brought for injunctive relief under the common law of unfair competition where the defendant "intends to commence" dissemination of the plaintiff's proprietary property); 17 U.S.C. § 502(a) (Copyright Act) (a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."); FLA. STAT. § 688.003(1) (FUTSA) ("Actual or threatened misappropriation may be enjoined.").

Upon review of BackJoy's well-plead allegations discussed above, I find that a permanent injunction is warranted. "Courts also regularly issue injunctions as part of default judgments." Arista Records, Inc. v. Beker Enters., Inc., 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003); Bait Prods. PTY Ltd. v. Aguilar, No. 8:13-CV-161-T-31DAB, 2013 WL 5653357, at *5 (M.D. Fla. Oct. 15, 2013) (same). Based on Defendants' breach of the NDA, false advertising, copyright infringement, and misappropriation of trade secrets, BackJoy has suffered irreparable injuries. See Sony Music Entm't, Inc., 45 F. Supp. 2d at 1347 ("Plaintiffs 'need not show irreparable harm, as the default against Defendants

satisfies the element of success on the merits.'"). The Court is satisfied that money damages will not compensate for the injuries BackJoy has sustained or will potentially sustain in the future. In light of Defendants' knowing refusal to continue defending this case, there is no indication that they would suffer a hardship as a result of an injunction. Finally, there is no indication that the public interest would be disserved by the issuance of a permanent injunction; indeed, it appears that such an injunction would serve the public interest by reducing the likelihood that any consumer intending to buy a BackJoy orthotic seat will mistakenly purchase an S-Back product instead.

### D. Attorney's Fees and Costs

BackJoy contends that it is entitled to attorney's fees and costs. Under Florida law, a prevailing party is entitled to attorney's fees only pursuant to an entitling statute or an agreement of the parties. High Bid, LLC v. Everett, 522 F. App'x 688, 694 (11th Cir. 2013) (citing Dade County v. Pena, 664 So. 2d 959, 960 (Fla. 1995)). The NDA includes a provision entitling BackJoy to attorney's fees if forced to enforce the agreement. (See Doc. 76-5 at 3). Attorney's fees are also statutorily authorized by the Lanham Act (15 U.S.C. § 1117), the Copyright Act (17 U.S.C. §505), and FUTSA (FLA. STAT. § 688.005). As a prevailing party, BackJoy is also entitled to its costs. See FED. R. CIV. P. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs ... should be allowed to the prevailing party."). Accordingly, I recommend that BackJoy be permitted to file a motion for attorney's fees and costs in accordance with Rule 54(d) and Rule 4.18 of the Local Rules for the United States District Court for the Middle District of Florida.

### III. Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1. Plaintiff's Motion for Entry of Default Judgment (Doc. 96) be **GRANTED** as to Counts One, Two, Three, Four, and Seven, and **DENIED** as to Counts Five, Six, Eight, and Nine.

2. That judgment be **ENTERED** for Plaintiff and against Defendants, as described herein.

3. That the Court enter an **INJUNCTION** permanently enjoining Defendants from: manufacturing, marketing, distributing, shipping, offering for sale, or selling any products developed through the use of Plaintiff's trade secrets, including the "S-Back" product; disclosing Plaintiff's proprietary or trade secret information to others, including but not limited to Defendants' manufacturers; and using in connection with the sale of any goods any artwork that incorporates protectable elements of Plaintiff's copyrighted material.

4. That Counsel for Plaintiff be given 14 days leave to **FILE** a motion for fees and costs in an amount to be determined.

### IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on August 23, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties