UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BACKJOY ORTHOTICS, LLC,

    Plaintiff,

v.                                                                                      Case No:   6:14-cv-249-Orl-41TBS

FORVIC INTERNATIONAL INC., WOOK
YOON, JOHN DOES, JANE DOES and
ABC CORPORATIONS,

    Defendants.

## REPORT AND RECOMMENDATION

This case comes before the Court on Plaintiff's Motion for Attorney's Fees (Doc 103). After due consideration, I respectfully recommend that the motion be granted with the caveat that Plaintiff recover significantly less money than it is requesting.

### I. Background

Plaintiff owns the trademark "BACKJOY," and all of the trade secrets and intellectual property related to its products, the BJ1 Device and BJ2 Device (Doc. 76, ¶ 3). Plaintiff also owns all rights to exploit these products (Id.). Defendant Forvic International, Inc. is a South Korean corporation which has its principal place of business in South Korea (Id., ¶ 17). Defendant Wook Yoon is a citizen and resident of South Korea, and the CEO of Forvic (Id., ¶ 18). Between 2007 and November 23, 2013, Forvic supplied and manufactured materials used in BACKJOY products on a contract basis (Id., ¶ 35). The parties' business relationship gave Defendants access to Plaintiff and its predecessors' confidential information, all of which was disclosed to Defendants pursuant to a Confidential and Non-Compete Agreement ("Agreement") (Id., ¶¶ 31-34).

Defendants misappropriated Plaintiff's confidential information and trade secrets relating to the BJ1 Device and BJ2 Device (Id., ¶¶ 4-5, 42). Defendants used this confidential information to manufacture, market, and sell unauthorized copies of Plaintiff's products under the name S-Back (the "Copies") (Id., ¶¶ 4-5, 42). Defendants' defalcation included the use, without permission, of Plaintiff's copyrighted text and other advertising materials to advertise the Copies (Id., ¶ 6). In November, 2013, Plaintiff discovered that Defendants had stolen its confidential information and were competing with Plaintiff in violation of the Agreement (Id., ¶¶ 50-52). Plaintiff demanded that Defendants cease and desist. When Defendants did not comply, Plaintiff filed this lawsuit on September 13, 2014 (Doc. 1; Id., ¶ 52-53).

Plaintiff's amended complaint for damages and injunctive relief included counts for breach of contract; violation of the Lanham Act, 15 U.S.C. § 1125(a); copyright infringement under 17 U.S.C. § 1 *et seq.*; unfair competition in violation of Florida common law; breach of the implied covenant of good faith and fair dealing; unjust enrichment; violation of the Florida Uniform Trade Secrets Act ("FUTSA"), FLA. STAT. 688.001, *et seq.*; violation of the Florida Unfair and Deceptive Trade Practices Act, FLA. STAT. 501.201 *et seq.*; and fraud (Doc. 76).

On April 24, 2014, Plaintiff motioned the Court for an *ex parte* temporary restraining order, restraining Defendants and those acting in concert with them, from the continued misappropriation of Plaintiff's confidential and trade secret information, unfair competition, false advertising, and violation of the Agreement (Doc. 9). Plaintiff asserted in the motion that Defendants are foreign nationals who would have to be served in accordance with the requirements of the Hague Convention on Service Abroad of Judicial Extrajudicial Documents (Id., at 1). The Court entered a temporary restraining order on May 2, 2014

(Doc. 10). Because formal service of process under the Hague Convention can take months, the Court decreed that the temporary restraining order would remain in place until Plaintiff perfected service on Defendants (Id., at 16).

On March 10, 2015, the Court issued an Order to Show Cause why this case should not be dismissed for want of prosecution and Plaintiff's failure to serve Defendants within the time provided in FED. R. CIV. P. 4(m) (Doc. 13). Plaintiff responded that on six occasions, the designated central authority in Korea had attempted, unsuccessfully, to effect service on Defendants pursuant to Article 5 of the Hague Convention (Doc. 14, ¶ 2). Two additional attempts had been made to serve Defendants at the office of a company affiliated with Forvic which listed Wook Yoon as its representative director (Id., ¶ 5). For these and other reasons, Plaintiff requested leave to serve Defendants pursuant to Rule 4(f)(3) (Id., ¶ 9).

The Court found that Plaintiff had "been less than diligent in moving for alternative service." (Doc. 17 at 5). Even so, the Court concluded that Plaintiff had "exercised 'reasonable diligence' and that the addresses of Forvic and Wook Yoon were 'not known' within the meaning of the Hague Convention." (Id., at 6). The Court discharged the Order to Show Cause, and directed Plaintiff to immediately serve Defendants by email and Federal Express (Id., at 10). The Court also set a July 17, 2015 hearing where Defendants would be given an opportunity to show cause why the Court should not enter a preliminary injunction (Id., at 11).

Plaintiff gave notice on July 10, 2015 that it had served Forvic and Wook Yoon by email on July 7; by express mail through the Korean Postal Service on July 10; and via Federal Express, with delivery expected on July 13, 2015 (Doc. 18). On July 13, 2015, Plaintiff filed a motion for the entry of a preliminary injunction against Defendants and

those acting in concert with them (Doc. 22). Defendants did not appear at the July 17, 2015 hearing (Doc. 24). In an Order dated July 28, 2015, the Court converted the temporary restraining order into a preliminary injunction (Doc. 32).

Defendants first appeared in the case on September 10, 2015 (Doc. 35). They asserted that there was no basis for the Court to exercise personal jurisdiction over them, and they requested a 21 day enlargement of time to respond to Plaintiff's complaint (Id., at 10, 15). The Court granted Defendants through October 24, 2015 to respond to the complaint (Doc. 48). The Court also said that if Defendants filed a motion in response to the complaint, then Plaintiff could depose Defendants (Id.).

Defendants filed a motion to dismiss on the grounds that the Court did not have personal jurisdiction over them, and that Plaintiff had failed to serve them in accordance with the Hague Convention (Doc. 50). Six days later, Plaintiff deposed Wook Yoon in Seoul, South Korea (Doc. 66). The Court set the motion to dismiss for hearing on January 21, 2016 (Doc. 56). At Defendants' request, the hearing was continued to February 25, 2016 (Doc. 62; Doc. 64; Doc. 65). On March 7, 2016, the Court denied the motion to dismiss (Doc. 73). Following this ruling, the parties submitted their case management report (Doc. 74), and on March 23, 2016, Plaintiff amended its complaint (Doc. 75).

On April 25, 2016, counsel for Defendants requested leave to withdraw (Doc. 79). They represented that they had been instructed to cease all work, and had been told that Defendants did not intend to engage new lawyers (Id., at 1). The motion was granted on May 10, 2016 (Doc. 81). The Court's Order informed Wook Yoon that until he hired a new lawyer, he was representing himself (Id., at 2). The Court gave Forvic 21 days to employ a new lawyer to appear on its behalf (Id., at 1-2). New counsel never appeared for either Defendant.

To this point, Plaintiff was represented by attorneys with the firm of McCarter & English, LLP and Wooten Kimbrough, which served as local counsel. On July 14, 2016, notice was filed that the McCarter & English attorneys were withdrawing, and that attorneys with the firm Perkins Coie LLP were substituting as counsel for Plaintiff (Doc. 82). The Court construed the notice as a motion, which it denied without prejudice (Doc. 83). A new motion to withdraw and substitute was filed and granted (Docs. 85-86). When the Perkins Coie lawyers entered the case, attorneys from the Orlando, Florida office of Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A. ("ADDMG") appeared as local counsel for Plaintiff (Docs. 87-88).

On August 1, 2016, Plaintiff motioned the Court for the entry of default against Forvic and Wook Yoon (Doc. 91). The motion was granted and the Clerk was instructed to enter default against both Defendants (Doc. 94). Next, Plaintiff filed a motion for the entry of default final judgment against Defendants (Doc. 96). I recommended that the motion be granted on the Plaintiff's claims for: (1) breach of contract; (2) violation of the Lanham Act; (3) copyright infringement; (4) unfair competition under Florida common law; and (5) violation of the FUTSA (Docs. 97). The Court adopted and confirmed my report and recommendation on February 28, 2017 (Doc. 98). In its Order, the Court gave Plaintiff through March 14, 2017 to file a motion for attorney's fees and costs (Id., at 2). The deadline was later extended to March 28, 2017, and Plaintiff timely filed its motion for attorney's fees (Docs. 101-103).

Plaintiff is asking the Court to award it $454,755 in fees, for 1,013.3 hours worked by attorneys and para-professionals employed by the McCarter English and Perkins Coie firms (Doc. 103 at 17). For reasons unknown to me, reimbursement is not sought for the services of the attorneys at Wooten Kimbrough and ADDMG who worked on the case.

## II. Entitlement

In the Agreement, Forvic "agrees to pay all attorney's fees and costs of [Plaintiff], which may arise out of or incident to the enforcement by [Plaintiff] of the terms of this agreement." (Doc. 1-6 at 3). Under Florida law,[1] a contractual provision entitling the prevailing party to attorney's fees is generally enforceable and, if applicable, the courts may not decline to enforce it. See Point E. Four Condo. Corp. v. Zevuloni & Assocs., Inc., 50 So.3d 687, 688 (Fla. 4th DCA 2010) ("Courts have no discretion to decline to enforce this kind of contractual attorneys fee provision."); TEC Serv, LLC v. Crabb, 622 F.App'x 867, 870 (11th Cir. 2015) ("Under Florida law, 'where a contract provides for an award of prevailing party attorney's fees, the trial court is without discretion to decline to enforce that provision.'") (quoting Lasco Enters., Inc. v. Kohlbrand, 819 So.2d 821, 826 (Fla. 5th DCA 2002)). Now, I find that Plaintiff is entitled to recover its reasonable attorney's fees for breach of the Agreement.

Under the Lanham Act, 15 U.S.C. § 1117(a), the Court may award reasonable attorney's fees to the prevailing party in exceptional trademark infringement cases. Prior to the Supreme Court's decision in Octane Fitness, LLC v. Icon Health & Fitness, Inc., 134 S.Ct. 1749 (2014), the U.S. Court of Appeals for the Eleventh Circuit defined "an exceptional case" as "one that can be characterized as malicious, fraudulent, deliberate and willful." Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332, 1335 (11th Cir. 2001). In construing a similar fee-shifting provision for patent infringement actions, the Octane court applied a more liberal definition–holding that "an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's

---

[1] The Agreement states: "Any suit over the terms of this agreement will be tried in the courts sitting in Orange County, Florida, U.S.A., and will be determined under Florida Law." (Doc. 1-6 at 3).

litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, 134 S.Ct. at 1756. Using this standard, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id.

In light of the almost identical fee-shifting provisions under the Lanham and Patent Act, courts within this circuit and elsewhere have applied the Octane Fitness standard when considering whether attorney's fees are warranted in trademark infringement actions. See, e.g., Georgia-Pacific Consumer Prods. LP v. Von Drehle Corp., 781 F.3d 710, 720-21 (4th Cir. 2015); Donut Joe's, Inc. v. Interveston Food Servs., LLC, No. 2:13-CV-1578-VEH, 2015 WL 6920693, at *1 (N.D. Ala. Nov. 3, 2015); RCI TM Corp. v. R & R Venture Grp., LLC, No. 6:13-cv-945-Orl-22, 2015 WL 668715, at *9-11 (M.D. Fla. Feb. 7, 2015); High Tech Pet Prods., Inc. v. Shenzhen Jianfeng Elec. Pet Prods. Co., No. 6:14-cv-759-Orl-22TBS, 2015 WL 926023, at *1-2 (M.D. Fla. Mar. 4, 2014); Carmax Auto Superstores, Inc. v. Starmax Finance, Inc., No. 6:15-cv-898-Orl-37TBS, 192 F.Supp.3d 1279, 11282-83 (M.D. Fla. 2016).

A comparison of Plaintiff's products with the Copies shows the strength of Plaintiff's infringement claims. In violation of the Agreement, Defendants manufactured, marketed, and sold the Copies. This placed them in direct competition with Plaintiff. When Plaintiff demanded that Defendants cease and desist, they refused. Given the "significant disparity of the merits of the parties' respective positions," I recommend the Court find this is an exceptional case, warranting an award of attorney's fees. High Tech, 2015 WL 926023, at *2.

Pursuant to the Copyright Act, "[i]n any civil action under this title … the court may also award a reasonable attorney's fee to the prevailing party …." 17 U.S.C. § 505. "In

copyright cases, although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely in default cases." Thompson File, LLC v. Velez, No. 6:13-cv-671-Orl-36TBS, 2014 WL 3721288, at *5 (M.D. Fla. July 28, 2014) (internal quotation marks and citations omitted); see also, Arista Records, Inc. v. Beker Enters., Inc., 298 F.Supp.2d 1310, 1316 (S.D. Fla. 2003); Broad. Music, Inc. v. Dano's Rest. Sys., Inc., 902 F.Supp. 224, 227 (M.D. Fla. 1995). For the reasons already discussed, I recommend the Court award Plaintiff its reasonable attorney's fees for Defendants' violation of the Copyright Act.

The FUTSA authorizes the award of reasonable attorney's fees to the prevailing party when there is a "willful and malicious misappropriation" of a trade secret. FLA. STAT. § 688.005. Courts have found that a defendant's "knowing or reckless" misappropriation is sufficient to invoke this statutory provision. Costa v. Datapro, Inc., No. 10-23172-CIV, 2012 WL 591307, at *3 (S.D. Fla. Feb. 22, 2012). Defendants knew, based upon the Agreement, their business relationship with Plaintiff, and the cease and desist letter, that they had no right to appropriate Plaintiff's intellectual property to manufacture, market and sell the Copies. Accordingly, I recommend the Court also award attorney's fees under the FUTSA.

### III. The Lodestar Approach

The Court employs the lodestar approach as the first step in calculating a reasonable fee for an attorney's services. Hensley v. Eckerhart, 103 S.Ct. 1933, 1939, 461 U.S. 424, 76 L.Ed.2d 40 (1983); Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). "[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." Norman, 836 F.2d at 1299; Loranger v. Stierheim,

10 F.3d 776, 781 (11th Cir. 1994) (per curiam). "A reasonable hourly rate is the prevailing market rate *in the relevant legal community* for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299 (emphasis added).

The burden is on the fee applicant to produce satisfactory evidence that the requested hourly rates are in line with prevailing market rates. Id. Satisfactory evidence is more than just "the affidavit of the attorney performing the work." Id. Suitable evidence should include evidence of the rates charged by lawyers performing similar work, or opinion evidence of reasonable rates. Id. Courts also look for evidence concerning the number of years of experience, or the nature of the experience, of each timekeeper for whom compensation is sought. Id. The trial court is itself, an expert on the reasonableness of attorney's fees, and may consider its own knowledge and experience when deciding a reasonable fee for counsel's services. Id. at 1303.

The number of hours billed is viewed as "the most useful starting point for determining the amount of a reasonable fee." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Counsel are expected to keep accurate "records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Norman, 836 F.2d at 1303. These time records should be provided to the court as part of the fee application. When making an application for an award of attorney's fees, counsel must exercise appropriate "billing judgment," and exclude hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. Once the prevailing party produces adequate billing records, the fee opponent "has the burden of pointing out with specificity which hours should be deducted." Rynd v. Nationwide Mutual

Fire Ins. Co., No. 8:09-cv-1556-T-27TGW, 2012 U.S. Dist. LEXIS 37973, * 9 (M.D. Fla. January 25, 2012) (quoting Centex-Rooney Const. Co., Inc. v. Martin County, 725 So.2d 1255, 1259 (Fla. 4th DCA 1999).

"[T]he lodestar as calculated in Hensley presumptively includes all of the twelve factors derived from the ABA Code of Professional Responsibility DR 2–106 (1980) and adopted in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), except on rare occasions the factor of results obtained and, perhaps, enhancement for contingency." Norman, 836 F.2d at 1299. The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19 (abrogated on other grounds by Blanchard v. Bergeron, 109 S.Ct. 939, 489 U.S. 87, 103 L.Ed.2d 67 (1989)).

After the Court determines the lodestar, it may adjust the amount upward or downward based upon a number of factors including the results obtained. Storfer v. Guarantee Trust Life Ins. Co., 666 F.3d 1277, (11th Cir. 2011) (citing Insurance Co. of North America v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991). "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436).

## IV. Fees Charged in Similar Cases

Plaintiff has submitted the affidavit of Brock A. Hankins, a registered patent attorney at ADDMG in support of its fee application. According to Mr. Hankins, the prevailing rates for attorneys specializing in intellectual property litigation in the Middle District of Florida are: $350 to $625 for partners with more than ten years of experience; $300 to $500 for partners with less than ten years of experience; $275 to $425 for senior associates; and $200 to $300 per hour for junior associates (Doc. 103-5, ¶ 6). According to Mr. Hankins, "[g]iven the extent of motion practice engaged in while Defendants were represented by counsel, the total fees of $454,755 is a reasonable amount of attorneys fees charged in the representation of Backjoy for this case." (Id., ¶ 7).

Plaintiff has not provided biographical information for the timekeepers who worked on this matter. In addition to the information supplied by Plaintiff, and my own knowledge and experience, I reviewed a sampling of recent, similar cases in this district, each of which I summarize for the Court.

In 2014, BMW of North America, LLC filed suit for trademark infringement, unfair competition, and deceptive and unfair trade practices. It alleged that the defendants were displaying its roundel logo on their building, business signage, and employee t-shirts without its permission. The defendants were served, defaulted, and in 2014, judgment was entered against them. BMW requested a total of $8,984 in fees for the combined services of its lead counsel and local counsel. Lead counsel claimed 21 hours on the case at a blended rate of $387 per hour and local counsel claimed 3.2 hours at a blended rate of $268.44 per hour. The Court found that the case was not exceptional and denied the fee application. BMW of North America, LLC v. Ismail Cuhadar, et al., Case No. 6:14-cv-40-Orl-37DAB, 2014 WL 5420133 (M.D. Fla. July 10, 2014).

In 2014, High Tech Pet Products, Inc., sued for infringement of its registered and unregistered trademarks and trade dress, unfair competition in violation of the Lanham Act, and the violation of related state laws. High Tech was represented by an attorney in California, and an attorney with ADDMG. The defendants were served, defaulted, and judgment was entered against them. For services rendered, the California attorney claimed 19.2 hours at $300 per hour for a total of $5,760, and ADDMG requested 14.4 hours at $415 per hour for a total of $5,976. Due to some duplication of effort by its lawyers, High Tech proposed a $1,000 reduction in the total amount. The Court agreed and in 2015, High Tech was awarded $10,736 in attorney's fees. <u>High Tech Pet Products, Inc. v. Shenzhen Jianfeng Electronic Pet Product Co., Ltd.</u>, et al., Case No. 6:14-cv-759-Orl-22TBS, 2015 WL 926023 (M.D. Fla. Mar. 4, 2015).

In 2015, Carmax Auto Superstores, Inc., filed suit for infringement of certain of its registered trademarks, false designation of origin, and unfair competition in violation nof the Lanham Act. The defendant was served, defaulted, and judgment was entered for Carmax. Post judgment, Carmax sought reimbursement for $25,936.60 in attorney's fees. Carmax' lead counsel was board certified in trademark law, and a member of the "Legal Elite" and a "Rising Star" in intellectual property litigation in North Carolina. He had also been recognized by Chambers USA as one of America's Leading Lawyers in Intellectual Property. This lawyer billed 53.1 hours at $306 per hour; a staff attorney with his firm billed 26.2 hours at $250 per hour; and a paralegal recorded .2 of an hour at $100 per hour. A partner at ADDMG, who served as local counsel for Carmax, billed 8.9 hours at $345 per hour, and a paralegal billed .5 of an hour at $95 per hour. The Court awarded Carmax all of the fees it requested. <u>Carmax Auto Superstores, Inc. v. Starmax Finance, Inc.</u>, Case No. 6:15-cv-898-Orl-37TBS, 192 F.Supp.3d 1279 (M.D. Fla. June 21, 2016).

In 2015, Delta Air Lines, Inc., sued eleven defendants who had participated in a scheme to willfully counterfeit Delta's marks to promote and sell travel club memberships. Delta sought statutory damages, punitive damages, attorney's fees, costs, and injunctive relief under the Lanham Act. It requested and was granted a temporary restraining order, leave to engage in expedited discovery, and a temporary injunction. The scope of the defendants' misconduct was great, the scheme involved a variety of overlapping business roles and functions, and the defendants took extreme steps to shield their identities and involvement from discovery. Nevertheless, the defendants were served, defaulted, and on motion, default judgment, including a permanent injunction, was entered against them. Delta was represented by an Atlanta, Georgia based law firm and a different firm based in Tampa, Florida. The Georgia firm billed a combined 659.36 hours at $250 per hour for a total of $164,840 in attorney's fees. In February, 2017, the Court found the hourly rate reasonable and the number of hours worked "extraordinary." Nevertheless, the Court concluded that this was not a run-of-the-mill case and awarded the amount requested. Insufficient information was provided concerning the work done by the Tampa firm, and no fees were awarded for its services. Delta Air Lines, Inc. v. Gonzolina Sotolongo, et al., Case No. 6:15-cv-2079-Orl-31TBS, 2017 WL 979074 (M.D. Fla. March 14, 2017).

In 2016, True Manufacturing Company, Inc., filed suit for damages and injunctive relief alleging federal trademark infringement and counterfeiting, cybersquatting, and federal and common law unfair competition. It requested a temporary injunction which the court took under advisement, the defendants were served, defaulted, and default judgment was entered against them. The case was handled from beginning to end by two partners at ADDMG, one of whom charged $365 per hour, the other of whom charged $325 per hour. A summer intern billed at $125 per hour, and a paralegal billed at $95 per

hour on the file. These timekeepers recorded a combined total of 65.2 hours. Based upon the billing rates, and after giving the client a $1,000 discount, in December, 2016, the firm requested a total of $19,675.55 which the court awarded. True Manufacturing Co., Inc. v. Christopher Boys, et al., Case No. 6:16-cv-634-Orl-37GJK, 2017 WL 1386823 (M.D. Fla. April 18, 2017).

Based upon Mr. Hankins' affidavit, the cases just discussed, and my own knowledge of the local legal market, I find that the reasonable hourly rate for a partner litigating this type of case in Central Florida in 2014-2017 ranges between $350 and $450 per hour; for an associate, the reasonable hourly rate ranges between $250 and $350 per hour; and the range for a paralegal is $100-$125 per hour.

## V. Plaintiff's Fee Application

Plaintiff seeks $436,325.50 for services rendered by attorneys and para-professionals at McCarter English. This portion of the fee application breaks down as follows:

| Timekeeper | Position | Rate | Hours | Fees |
| --- | --- | --- | --- | --- |
| Lee C. Bromberg | Partner | $825 | 10.5 | $8,662.50 |
| Harley I. Lewin | Partner | $750 | 105.8 | $79,350.00 |
| James H. Donoian | Partner | $575/580/610 | 231.25 | $139,067.25 |
| Stephanie J. Cohen | Partner | $450 | 205.1 | $92,295.00 |
| Wyley S. Proctor | Associate | $450/475 | 66.3 | $30,792.50 |
| Katelyn M. Gillece | Associate | $410 | 3.1 | $1,271 |
| Zhenggui Li | Associate | $395 | 1.2 | $474.00 |
| Barbara Curtis | Associate | $375 | 2.8 | $1,050.00 |
| Gabriel Goldman | Associate | $335 | 7.8 | $2,613.00 |
| Alice M. Pang | Associate | $330 | .1 | $33.00 |
| Christiana L. Sawaya | Law Clerk/Associate | $165/$265/$295 | 267.55 | $69,952.75 |

| Mabel E. Andrews | Paralegal | $160/$165/$175 | 62.6 | $10,256.50 |
| Edmund Dabkowski | Research Analyst | $175 | 1.0 | $175.00 |
| James J. Greenstone | Research Analyst | $150/$165 | 2.2 | $333.00 |

Considering the nature of the work performed and the results obtained, the number of McCarter & English timekeepers who worked on this file, the hours they recorded (967.3), their billing rates, and the total fees charged ($436,325.50) shock my conscience. No reason is offered, nor can I think of any, why a single partner, single associate, and single paralegal could not have competently litigated this matter from beginning to end. The sheer number of timekeepers who worked on this case, and the descriptions of their work, contained in the firm's billing records, lead me to conclude that McCarter & English's approach to this case was wasteful and inefficient.

The Court need only focus on two tasks to see how this case was overworked. Four partners recorded a minimum[2] of 51.7 hours on the preparation of the complaint. In addition, three associates billed a combined minimum of 53.6 hours to prepare the complaint. So, the firm billed at least 105.3 hours to draw an unremarkable complaint. In addition to the time spent on the complaint, between January 6 and April 24, 2014, partner Stephanie J. Cohen billed 100 hours; partner Harley I. Lewin billed 10.7 hours; partner James H. Donoian billed 1.8 hours; partner Lee C. Bromberg billed. 8 hours; associate Christiana L. Sawaya billed 5.4 hours; and paralegal Mabel E. Andrews billed 14.5 hours on the motions for temporary restraining order and preliminary injunction. This totals 113.3 of partner time; 5.4 hours of associate time; and 14.5 hours of paralegal time for two motions on the same subject matter, and on which there was never a contested hearing.

---

[2] I did not attempt to count every time increment recorded by every timekeeper.

Because Mr. Hankins opines that the time billed is reasonable given the amount of motion practice that occurred while Defendants were represented, I next discuss the totality of that practice. On September 10, 2015, Defendants filed a motion for a 21 day extension of time to respond to the complaint (Doc. 35). Plaintiff filed a written response in opposition to the motion (Doc. 44). On September 23, 2015, Defendants' counsel filed two unopposed motions to appear *pro hac vice* (Docs. 38-39). Defendants filed a motion to dismiss on October 23, 2015, arguing that they did not have sufficient minimum contacts with Florida for the Court to acquire personal jurisdiction over them, and that they had not been properly served with process (Doc. 50). Plaintiff filed a memorandum in opposition to the motion (Doc. 52). Defendants motioned the Court to continue the hearing on their motion to dismiss (Doc. 62), which Plaintiff did not oppose (Doc. 63). On February 25, 2016 the Court heard oral argument on the motion to dismiss, which it denied on March 7, 2016 (Doc. 73). On March 4, 2016, Defendants objected to certain declarations Plaintiff had filed in opposition to their motion to dismiss, and requested the imposition of sanctions (Doc. 70). The declarations were stricken and the request for sanctions denied without Plaintiff having filed a response (Docs. 71-72). Counsel gave notice of their intent to withdraw on April 25, 2016 (Doc. 79); they formally moved to withdraw on May 9, 2016 (Doc 80), and the Court granted the motion on May 10, 2016 (Doc. 81). With all due respect to Mr. Hankins, this motion practice supports only a small fraction of the over 900 hours and over $435,000 McCarter & English billed on the file.

After considering all of the information at hand, I find that the following is reasonable for the services rendered by McCarter & English: (1) To intake the new matter, interview the client, review its documents, confer with the client's Korean counsel

and prepare the complaint: 25 hours at a blended rate of $380 per hour making a total of $9,500; (2) For service of process on Defendants: 6 hours at a blended rate of $250 per hour making a total of $1,500; (3) To motion the Court for a temporary restraining order and later, a motion for preliminary injunction: 20 hours at a blended rate of $380 per hour making a total of $7,600;[3] (4) For the motion practice while Defendants were represented: 50 hours at a blended rate of $380 per hour making a total of $19,000; and (5) To these amounts, I add an additional 50 hours at a blended rate of $350 per hour for telephone conversations, correspondence, and other unspecified legal work, in recognition that there is more to a litigating a case than filling papers and arguing motions. This results in an additional $17,500. Combining the foregoing sums, I find that $55,100 is a reasonable fee for the services rendered by McCarter & English. I note that this amount, which does not include fees for Perkins Coie, is greater than the fees awarded in all but one of the other, similar cases I reviewed to assist me in making my analysis.

Plaintiff seeks reimbursement for the following fees paid to the Perkins Coie firm:

| Timekeeper | Position | Rate | Hours | Total |
|---|---|---|---|---|
| William Rava | Partner | $615 | 3.9 | $2,398.50 |
| Elizabeth Banzhoff | Counsel | $510 | 8.1 | $4,131.00 |
| Tyler Anthony | Associate | $350 | 34 | $11,900.00 |

The work performed by Perkins Coies consisted, for the most part, of preparing and filing the motions for default and default final judgment, and summarizing this case for Plaintiff's Korean counsel (Doc. 103-2). In this report and recommendation I do not quarrel with the total hours expended, but the rates must be adjusted to reflect what is

---

[3] Twenty hours is reasonable because Plaintiff's counsel had already expended significant time to research and draft the complaint.

customary in this locale. Now, I find that Plaintiff should recover $1,618.50 (3.9 hours x $415 per hour) for Mr. Rava's services; $3,037.50 (8.1 hours x $375 per hour) for Ms. Banzhoff's services; and $8,500 (34 hours x $250 per hour) for Mr. Anthony's services. This results in a total of $13,156 for services rendered by Perkins Coie.

I find no reason to adjust the lodestar up or down. I also find that the work here is sufficiently interrelated that there is no need to allocate fees by count or between the Defendants.

## VI. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Court **GRANT** the motion in part and enter judgment for Plaintiff and against Defendants, jointly and severally, in the amount of $68,256.

## VII. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on June 12, 2017.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Unrepresented Parties